AMERADA HESS CORPORATION *vs.* MITCHELL GARABEDIAN.[1]

Hampden. April 5, 1993. - August 13, 1993.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Venue, Relief from judgment. *Contract*, Option, Specific performance. *Landlord and Tenant*, Option to purchase.

An action for specific performance of an option to purchase a certain parcel of land was a transitory action, properly brought in the Superior Court in the county in which the plaintiff corporation maintained its usual place of business. [151]

The "track designation" of a civil action was a matter of judicial discretion, and neither abuse of that discretion nor unfair prejudice was shown. [151]

An option to purchase, contained in a lease of certain premises, was binding, by its terms, on the lessor's successors in title, even though the lessee had declined to exercise its right of first refusal when the lessor conveyed the premises. [152-155]

Where it was apparent that the parties to a lease intended it to be the integrated and final expression of their agreement, and the agreement was unambiguous, evidence of negotiations leading up to the final form of the lease was immaterial. [155]

In an action for specific performance of an option to purchase, contained in a lease of certain premises, the summary judgment materials demonstrated no basis for the defendant's claim that the plaintiff's inequitable conduct precluded relief, where the conduct alleged, namely, violation of environmental regulations and retaliatory exercise of the option, did not directly affect the claim for specific performance. [155-156]

CIVIL ACTION commenced in the Superior Court Department on September 24, 1990.

The case was heard by *John F. Moriarty*, J., on a motion for summary judgment.

---

[1]Individually and as trustee of Vestt Realty Trust.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William H. Gordon* for the defendant.

*Kevin C. Maynard* (*Francis D. Dibble, Jr.*, with him) for the plaintiff.

O'CONNOR, J. The plaintiff corporation (Amerada) seeks specific performance of an agreement to sell real estate following its exercise of an option to purchase contained in a written lease of which it is successor lessee and the defendant (Garabedian), as trustee of Vestt Realty Trust, is successor lessor. In response to Amerada's complaint, Garabedian first filed a motion to dismiss for improper venue or, in the alternative, to remove the action to Essex County. After that motion was denied, Garabedian filed an answer to the complaint and a counterclaim containing eight counts. The counterclaim made numerous allegations, including allegations of the release or threats of release of oil or hazardous material onto the leased premises, violation of the lease requirement that the tenant comply with the law and authorized government directives, and unfair retaliation by Amerada for Garabedian's attempts to fulfil his obligations under G. L. c. 21E (1992 ed.). Garabedian then filed a motion "to assign action to proper track designation, or in the alternative, extend the time to conduct discovery by fourteen months." That motion was denied.

Thereafter, Amerada moved for summary judgment as to its claim seeking specific performance and as to the several claims made by Garabedian in the counterclaim. A judge allowed Amerada's motion and ordered Garabedian, in his individual capacity and as a trustee of Vestt Realty Trust "to deliver or cause to be delivered to [Amerada]. . . (a) a complete abstract of title or other evidence of title satisfactory to [Amerada] of the premises . . . (b) an up-to-date survey . . . of the said premises . . . and upon tender by [Amerada] of the purchase price of $174,000.00 within thirty (30) days thereafter; (c) a good and sufficient warranty deed . . . ." The judge "further ordered and adjudged that summary judgment be entered on the counterclaim for [Amerada], dis-

missing the counterclaim in the entirety." Garabedian filed a motion for relief from judgment pursuant to Mass. R. Civ. P. 60(b), 365 Mass. 828 (1974), and that motion was denied. Garabedian appealed from the denial of his several motions and the allowance of Amerada's motion for summary judgment. We transferred the case to this court on our own initiative. We affirm.

We discuss the challenged rulings in the order in which they were made, the first ruling being the denial of Garabedian's motion to dismiss or transfer due to improper venue. The action was commenced in the Superior Court in Hampden County, which is the county where Amerada maintained its usual place of business. Garabedian mistakenly characterizes this action as a local action based on "privity of estate," the proper venue of which is the county where the real property is located. However, the plaintiff seeks an order of specific performance under a contract, and therefore, for purposes of venue, the action is transitory, not local. "An action based on fraud, trust, or contract is transitory, although lands not within the jurisdiction of the court may be affected by the decree. Within this principle are suits for specific performance of contracts, even though the subject of the contract is real property." *First Fed. Sav. & Loan Ass'n* v. *Merrimack Valley Nat'l Bank*, 5 Mass. App. Ct. 320, 323 (1977), quoting 1 Moore's Federal Practice § 0.142 [2.1], at 1367 (2d ed. 1976). As a transitory action, the action was properly brought in Hampden County where the plaintiff maintained its usual place of business, pursuant to the general venue provisions of G. L. c. 223, § 8 (1992 ed.).

The second ruling from which Garabedian appeals is the denial of his motion to assign the case to a different track designation or extend the period allowed for discovery by fourteen months. That motion was filed ten months after the complaint was filed, and requested that the track designation be changed from a fast (F) track case to an average (A) track case. The judge acted within his discretion in denying the motion and, in addition, no unfair prejudice has been shown.

Based on the pleadings, a deposition of Garabedian, and answers to interrogatories of both parties, the judge who ruled on Amerada's summary judgment motion concluded that the following facts appeared to be undisputed. We quote from the judge's memorandum of decision. "The premises that are the subject of this controversy consist of a parcel of land with the buildings and other improvements thereon located at 490 Broadway (Route 28) in the City of Methuen. On May 12, 1965, the then owner of the premises, E & W Realty, Inc., leased the premises to Hess Oil and Chemical Corporation for use as a gasoline service station. The term of the lease was to begin [ninety] days after the lessor delivered certain licenses and permits to the lessee and was to run for a period of [twenty] years, but the tenant was given two options to renew the lease for two additional periods of [five] years each by the giving of appropriate notices at least [sixty] days prior to the expiration of the then current term. The plaintiff is a successor in interest to Hess Oil and Chemical Corporation as a result of a merger between that corporation and Amerada Petroleum Corporation in 1969.

"Article 28 of the lease provides as follows:

> 'Lessor hereby grants to Tenant the exclusive right, at Tenant's option to purchase the demised premises, together with all structures, improvements, and equipment thereon, free and clear of all liens, and encumbrances (including leases which were not on the premises at the date of this lease), at any time during the original or renewal term of this lease for one hundred and seventy-four thousand ($174,000) dollars, or to make such purchase on the same terms and at the same price as any bona fide offer for said premises received by Lessor and which offer Lessor desires to accept. Upon receipt of a bona fide offer, *and each time any such offer is received*, Lessor shall immediately notify Tenant in writing of the full details of such offer, including the name and address of the offeror, whereupon tenant shall have thirty (30) days after receipt of

such offer in which to elect to exercise Tenant's prior right to purchase, by written notice to Lessor. No sale of or transfer of title to said premises shall be binding on Tenant unless and until the foregoing requirements are fully complied with. If tenant elects to exercise its *standing* right to purchase, or its prior right to purchase pursuant to any such bona fide offer, it is agreed that the terms and conditions set forth in the last paragraph hereof shall govern such purchase. *Such option shall be pre-emptive and continuing, and shall be binding upon Lessor, Lessor's heirs, devisees, legal representatives, successors and assigns.*' (Emphasis supplied).

"Article 28 then goes on to provide the procedure that is to be followed by the parties upon receipt by the Lessor of a Tenant's notice of election to exercise the option.

"Article 23 of the lease provides as follows:

'The failure of the Lessor or Tenant to insist upon strict performance of any of the covenants or conditions of this lease *or to exercise any option herein conferred in any one or more instances,* shall not be construed as a waiver or relinquishment for the future of any such covenants, conditions or options, but the same shall remain in full force and effect' (Emphasis supplied).

"The defendant in his individual capacity purchased the premises from E & W Realty, Inc. on September 16, 1983 for a purchase price of $120,000. The purchase was made in pursuance of a purchase and sale agreement executed on June 9, 1983 in which express reference was made to the [Amerada] lease. After the agreement was executed and before the deed was delivered, E & W notified [Amerada] of the offer and its desire to accept it and gave [Amerada] an opportunity to exercise its right of first refusal. On June 24, 1983, [Amerada] advised E & W that it did not wish to exercise its right of first refusal 'in this instance', adding in the next sentence: 'Of course, both options will continue in effect.'

"On August 23, 1985, [Amerada] exercised the first of its two [five] year renewal options. On June 8, 1990, it exercised the second one.

"In the meanwhile, on February 6, 1987, Garabedian had caused the Vestt Realty Trust to be created. He is the sole trustee and the sole beneficiary of that trust. At sometime thereafter, but no later than December 5, 1988, he conveyed the premises to himself as trustee of the Vestt Realty Trust for a price of $10.00.

"On June 8, 1990, [Amerada] sent Garabedian a written notice that it was exercising its option to purchase the premises for a price of $174,000.

"On June 27, 1990, Garabedian (now apparently acting as attorney for the Vestt Realty Trust) sent [Amerada] a letter stating that the option to purchase the premises for $174,000 was not legally enforceable, and that the Lessor would therefore not proceed to a closing."

Garabedian contended in the Superior Court and contends here that the option to purchase the premises for the fixed price of $174,000 lapsed and became unenforceable when Amerada declined to exercise its right of first refusal and Garabedian bought the property for $120,000 in 1983. Rejecting that contention, the judge concluded that "by virtue of the plain and unambiguous language of the lease [Amerada's] fixed price option did not lapse when [Amerada] declined to exercise its right of first refusal in 1983, and . . . it was still in effect when [Amerada] attempted to exercise it on June 8, 1990." We agree. Article 28 clearly provides that the tenant (lessee) has an "exclusive right, at Tenant's option" to purchase the property, and that that option may be exercised in either of two ways: by the tenant's commitment to pay $174,000 or the tenant's commitment to meet the bona fide offer of a third party which the lessor "desires to accept." Article 28 provides that "[s]uch option," that is, the option to purchase according to either of the two formulas prescribed for setting the price, "shall be pre-emptive and continuing, and shall be binding upon Lessor, Lessor's heirs, devisees, legal representatives, successors and assigns." Arti-

cle 28 is not ambiguous and its clarity is only buttressed by the provision in Article 23 that "[t]he failure of the . . . Tenant to insist upon strict performance of any of the covenants or conditions of this lease or to exercise any option herein conferred in any one or more instances, shall not be construed as a waiver or relinquishment for the future of any such covenants, conditions or options, but the same shall remain in full force and effect." Amerada is entitled to specific performance of the lease agreement in accordance with its terms.

Garabedian argues that, in construing the lease, the judge should have considered an affidavit that Garabedian had filed in opposition to the motion for summary judgment. We reject that contention. Article 25 of the lease provides: "This lease merges and supersedes all prior negotiations, representations and agreements, and constitutes the entire agreement between lessor and Tenant." It is apparent that the parties to the lease intended it to be the integrated and final expression of their agreement, and the agreement is unambiguous. "[W]here the agreement of two contracting parties has been put in an unambiguous written form that the parties consider as final this final form is the contract and, therefore, evidence of negotiations leading up to this final form of the contract is immaterial." P.J. Liacos, Massachusetts Evidence 385 (5th ed. 1981).

In addition to his contention that the option to purchase had lapsed, Garabedian seeks to avoid enforcement of the option on the ground that Amerada has "unclean hands" because according to Garabedian: (1) Amerada intentionally violated the lease by intentionally violating environmental regulations, and (2) Amerada's exercise of the option was motivated by a desire to retaliate for Garabedian's efforts to force Amerada to remedy its violations of environmental law at the site. We are satisfied that nothing in the materials submitted by Garabedian demonstrates a viable basis for a contention that Amerada intentionally violated environmental laws or exercised its option in retaliation for Garabedian's efforts to force Amerada to remedy its violations. We agree

with the judge that there was "nothing in the material submitted by Garabedian that would warrant application of the 'clean hands' doctrine against [Amerada]."

Moreover, whatever environmental problems Amerada may have had at the site, its alleged inequitable conduct did not directly affect its claim of specific enforcement. As the judge correctly assessed, "there is no direct connection between those problems or the way [Amerada] handled them and its claim for specific enforcement of its contract." In order to deny relief to a party because of inequitable conduct, the conduct at issue must directly affect the claim being brought. *Flynn* v. *Haddad*, 25 Mass. App. Ct. 496, 506 (1988). In the instant case, the alleged inequitable conduct does not directly affect the claim for specific performance. The summary judgment materials show that there are no equitable defenses to this action. Therefore, Amerada is entitled to specific enforcement of the unambiguous terms of the lease according to its terms. *Sherman* v. *Employers' Liab. Assurance Corp.*, 343 Mass. 354, 356 (1961).

Our conclusion that specific performance was correctly ordered leads to the further conclusion that the judge was correct in granting summary judgment in favor of Amerada dismissing Garabedian's eight-count counterclaim. This is consistent with Garabedian's brief, which makes clear that his argument relative to the counterclaim assumes his prevailing on the issue relative to Amerada's complaint ("because the trial court erred in granting summary judgment on plaintiff's claims the trial court erred in giving summary judgment on [Garabedian's] counterclaims").

Finally, and briefly, we address Garabedian's argument that the denial of his motion for relief from judgment under Mass. R. Civ. P. 60 (b) was erroneous. The motion was based on the same contentions which we have considered and rejected, so, even if rule 60 were to provide for general reconsideration of an order or a judgment, or an avenue for challenging alleged legal errors that are readily correctible on appeal, which it does not, *Pentucket Manor Chronic Hosp.* v.

*Rate Setting Comm'n,* 394 Mass. 233, 236 (1985), the motion was properly denied.

*Judgment affirmed.*