Hinkle, Margaret R., J.
Plaintiff General Electric (“GE”) filed this action against the defendant joint liquidators of Electric Mutual Liability Insurance Company, Limited, formerly known as Electric Mutual Liability Insurance Company (“EMLICO”), alleging breach of contract from EMLICO’s refusal to defend and indemnify GE with respect to liability for environmental contamination at 103 sites located in 32 states and Puerto Rico. OneBeacon America Insurance Company (“OneBeacon”) was allowed to intervene as a defendant in this action and filed three counterclaims against GE. This matter is before the court on GE’s motion for summaiy judgment on OneBeacon’s third counterclaim under Mass.R.Civ.P. 56. For the reasons discussed below, after a hearing, GE’s motion for summary judgment is allowed.
BACKGROUND
EMLICO was organized in Massachusetts as a mutual insurance company in December of 1927. EMLICO was owned by its policyholders, and GE was at all times EMLICO’s principal corporate policyholder and primary stockholder. GE purchased numerous primary general liability insurance policies from EMLICO between 1959 and 1967. From 1959 to 1967, Employers Surplus Lines Insurance Company, the predecessor to Commercial Union (“CU”), issued a series of reinsurance contracts to EMLICO which re-insured a significant portion of EMLICO’s liability to GE. CU also issued reinsurance contracts to EMLICO between 1975 and 1979. The Reinsurance Contracts obligate CU to indemnify and reimburse EMLICO for losses EMLICO pays on its coverage obligations to GE.
*67 Beginning in the 1960s, GE incurred liability to state and federal environmental agencies for contamination at 103 sites located in 32 states and Puerto Rico. EMLICO refused to indemnify GE or reimburse for its costs of defending against such liability. EMLICO and GE conducted non-binding arbitration proceedings between 1985 and 1991 and reached a settlement with respect to environmental contamination claims at seven sites. In 1992, EMLICO presented reinsurance claims to CU in connection with GE’s claims, but CU rejected them.
In May of 1995, EMLICO and CU entered into binding arbitration proceedings before a three-member panel (“the Panel”) to determine the scope and extent of CU’s liability to EMLICO under the Reinsurance Contracts. GE was not a party to these proceedings. In June of 1995, EMLICO redomesticated to Bermuda with the approval of the Massachusetts Commissioner of Insurance (“the Commissioner”) and the Bermuda Minister of Finance and Bermuda Registrar of Companies. The Commissioner granted approval based on the conclusion that nothing indicated that EMLICO was insolvent or intended to pursue liquidation upon arrival in Bermuda.
EMLICO registered as a Bermuda insurer and became known as Electric Mutual Liability Insurance Company, Limited.[2] On October 20, 1995, EMLICO filed a winding-up petition in the Supreme Court of Bermuda. The Bermuda court appointed defendants David E.W. Lines, Christopher Hughes and Peter C.D. Mitchell as liquidators (collectively, “the Joint Liquidators”) for EMLICO.
In 1997, the Panel divided the EMLICO/CU arbitration into three phases: Phase I to resolve CU’s claim for rescission of the Reinsurance Contracts on the ground that EMLICO breached the contracts in bad faith by colluding with GE to redomesticated in Bermuda in order to maximize its reinsurance recovery against CU; Phase II to resolve the issue of reinsurance coverage for EMLICO’s liability to GE with respect to asbestos claims; and Phase III to resolve the issue of reinsurance coverage for EMLICO’s liability to GE with respect to environmental contamination claims.
Over a two-year period, the Panel held more than 60 days of evidentiary hearings on Phase I of the proceedings. On October 31, 2001, the Panel issued an order in Phase I denying CU’s request for rescission of the Reinsurance Contracts as follows:
While the Panel is in unanimous agreement that:
(i) EMLICO deceived the Massachusetts Commissioner of Insurance and Bermuda authorities about its solvency, and
(ii) EMLICO moved to Bermuda to avoid being liquidated in Massachusetts, and
(iii) EMLICO intended to declare insolvency immediately after redomestication, because this arbitration Panel is the final adjudicator, the Panel finds that CU is no worse off in Bermuda than in Massachusetts.
The Panel clarified its order by letter dated Januaiy 26, 2002 as follows:
When the Panel stated that it was the “final adjudicator” and that CU was “no worse off,” its intent was that since the ultimate economic impact of the overall dispute between EMLICO and CU is to be decided by the Panel as part of this arbitration, the Panel will be in a position in later phases to adjust for any differences that may have resulted from the deceitfully obtained change of jurisdiction from Massachusetts to Bermuda. By this process, when the arbitration is completed, CU will end up in the same position as it would have been in had there been no redomestication.
Thereafter, CU filed a petition in the United States District Court for the Southern District of New York to confirm the Panel’s finding of fraud but vacate that part of the order which denied the rescission claim, arguing that public policy precluded the court from allowing EMLICO to enforce its fraudulently obtained rights under the Reinsurance Contracts. On December 18, 2002, the Southern District affirmed the Panel’s order in its entirety. See Commercial Union Ins. Co. v. Lines, 239 F.Sup.2d 351, 356 (S.D.N.Y. 2002). CU appealed that decision to the Court of Appeals for the Second Circuit, arguing that EMLICO’s redomestication to take advantage of more favorable liquidation procedures prejudiced CU’s rights in the arbitration. On June 19, 2003, the Panel issued a decision in Phase II, awarding EMLICO/the Joint Liquidators more than $36 million, representing CU’s share of paid asbestos losses.
In an order dated August 5, 2004, the Second Circuit vacated the District Court’s order and remanded the matter to the District Court to address whether liquidation in Bermuda could affect the results of the arbitration and whether confirming the award would violate the court’s equitable principles. See Commercial Union Ins, Co. v. Lines, 378 F.3d 204, 209-10 (2d Cir. 2004).
GE filed this action against the Joint Liquidators on July 21, 2006. CU’s successor, OneBeacon, was allowed to intervene as a defendant to interpose any available defenses to GE’s claims on behalf of EMLICO. OneBeacon asserted three counterclaims against GE. OneBeacon’s first counterclaim seeks a declaration that the policies are subject to rescission because the parties had an understanding that the policies did not cover environmental contamination, and GE failed to disclose facts regarding its intent to seek environmental contamination coverage and failed to provide environmental loss or exposure information which EMLICO could use to assess accurately the degree and character of risk it was assuming. The second counterclaim seeks a declaration that coverage is barred by GE’s constructive fraud in seeking to repudiate the *68 parties’ mutual understanding and agreement that the EMLICO policies did not provide coverage for environmental claims. The third counterclaim seeks a declaration that GE is not entitled to coverage because it breached its fiduciary duty to EMLICO as its sole corporate and dominant policyholder and principal owner by installing David St. Laurent as President of EMLICO and persuading him to discontinue the nonbinding arbitration, repudiate the position that the policies did not cover environmental contamination, and enter into seven site settlements. The third counterclaim also alleges breach of fiduciary duty arising out of EMLICO’s redomestication from Massachusetts to Bermuda.
On January 15, 2007, the Supreme Court of Bermuda granted the Joint Liquidators’ request to litigate GE’s environmental contamination claims against EMLICO in Massachusetts. This was the resolution repeatedly demanded by CU to return it to the same position it would have been in but for EMLICO’s redomestication.
Upon remand in the arbitration case, the District Court (Griesa, J.) held an 11-day evidentiary hearing. In a decision and order dated May 30, 2008, Judge Griesa found that the essential change resulting from the redomestication was that the Joint Liquidators took over EMLICO’s position rather than the Massachusetts Insurance Commissioner. See Commercial Union Ins. Co. v. Lines, 2008 WL 2234634 at *7 (S.D.N.Y. May 30, 2008). With respect to Phase II of the proceedings, the court found that EMLICO owed a fiduciary duly to both its reinsurers and to GE as the insured. Id. The court concluded that the Joint Liquidators were obligated to consider the factual and legal positions urged by both sides and to take a stand in accordance with what they believed to be the best supported position. Id. at *8. The court found that the Joint Liquidators were persons of the highest integrity and expertise, that GE never had an intention to control the Joint Liquidators, and that the Joint Liquidators did not allow themselves to be controlled by GE. Id. The court further found that all the Joint Liquidators’ positions in the arbitration proceedings were well grounded in fact and law, and that their settlement with the other reinsurers brought hundreds of millions of dollars into the EMLICO estate, benefitting the estate as well as the reinsurers. Id. The court concluded that the redomestication did not deprive CU of any substantial advantage it would have gained in Massachusetts. Id. at *9. Finally, the court concluded that the court’s affirmance of the arbitration award would not violate public policy because “the deceit, which involved concealment of EMLICO’s imminent insolvency, did not really change the nature of Commercial Union’s obligations under the reinsurance contracts. Thus, the arbitrators did not permit Commercial Union to transform the deceit into an enormous benefit to Commercial Union in the form of relieving it of all of its reinsurance obligations to EMLICO.” Id. CU appealed this ruling to the Second Circuit, and that appeal remains pending as of the date of this memorandum.
Meanwhile, discovery proceeded in this action between GE and the Joint Liquidators. OneBeacon was permitted to intervene fbr the purpose of stepping into EMLICO’s shoes and prosecuting EMLICO’s defenses to GE’s coverage claims. In July of 2008, OneBeacon moved to compel production of certain documents from GE relating to EMLICOls redomestication. GE opposed production of these documents, citing the attorney-client privilege, and OneBeacon asserted that the crime-fraud exception to the privilege applied.
On October 2, 2008, this Court (Gants, J.) held a hearing on the motion to compel. The parties agreed at the hearing that the documents at issue were relevant only to OneBeacon’s fiduciary duty counterclaim. In a decision and order dated December 18, 2008 and revised slightly on December 23, 2008, Judge Gants deferred any ruling on the motion to compel until the court determined, as a matter of law and equity, whether OneBeacon could prevail on its third counterclaim. The Court ordered that in doing so, it would assume the following facts:
(1) GE and EMLICO conspired together to make false representations to the Massachusetts Division of Insurance and the Bermuda authorities about EMLICO’s solvency, when they knew that EMLICO would declare itself insolvent shortly after it changed its domicile to Bermuda;
(2) GE and EMLICO knew that these false representations were necessary to induce the Massachusetts Commissioner of Insurance and the Bermuda authorities to approve the change in domicile; and
(3) GE and EMLICO wanted to change EMLICO’s domicile to Bermuda because they understood that, upon liquidation, they would have a substantially greater chance to obtain coverage of GE’s environmental claims from the reinsurers if EMLICO were domiciled in Bermuda rather than in Massachusetts.
This Court will now assume the truth of these facts for purposes of GE’s motion for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the *69 opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
GE moves for summary judgment on OneBeacon’s third counterclaim which seeks a declaration that GE is not entitled to coverage because it breached a fiduciary duty to EMLICO by directing and overseeing EMLICO’s redomestication from Massachusetts to Bermuda.[3]
I. Legal Analysis of Redomestication Counterclaim
OneBeacon contends that as the sole shareholder and dominant policyholder of EMLICO, GE owed EMLICO a fiduciary duty akin to the duty owed by a dominant shareholder to an ordinary corporation. See Donahue v. Rodd Electrotype Co., 367 Mass. 578, 593 (1975); Horizon House-Microwave, Inc. v. Bazzy, 21 Mass.App.Ct. 190, 198 (1985); In re Mi-lor Corp., 348 F.3d 294, 302 (1st Cir. 2003); Connecticut Gen Mortgage & Realty Investments v. Siddall, 1981 WL 1722 at *15 (D.Mass. 1981); Seventeen Stone Corp. v. General Tel Co., 204 F. Sup. 885, 888 (S.D.N.Y. 1962) (all holding that majority or controlling shareholder owes corporation a fiduciary duty analogous to duty owed by directors).
OneBeacon has not cited, nor has this Court found, any caselaw or secondary authority for the proposition that the sole shareholder and policyholder of a mutual insurance company owes the same fiduciary duty to the company owed to a business corporation by its controlling shareholder. The reported cases concerning mutual insurance companies all involve a fiduciary duty flowing in the opposite direction, from the company to the policyholder, in disputes involving the company’s equity rather than the disposition of insurance claims. See, e.g., Rief v. Evans, 630 N.W.2d 278, 287 (Iowa 2001) (listing numerous jurisdictions which allow policyholders to bring suit against mutual company for breach of fiduciary duty); Silverman v. Liberty Mut Ins. Co., 2001 WL 810157 at *6 (Mass.Sup.Ct. July 11, 2001) (Gants, J.) [13 Mass. L. Rptr. 303] (opining that it may generally be true that mutual insurance company has no fiduciary duty to its insured with respect to contractual matters, but it could have a fiduciary duty of good faith when providing information policyholders will rely on in surrendering their equity rights); Heritage Healthcare Services, Inc. v. The Beacon Mut. Ins. Co., 2004 R.I.Super. LEXIS 29 at * 14 (R.I.Super.Ct. Jan. 21, 2004) (mutual insurance company does not owe policyholders fiduciary duty with respect to treatment of insurance claim but owes policyholders as owners the same fiduciary duty a corporation owes its shareholders with respect to distributions). Cf. Harhen v. Brown, 431 Mass. 838, 842 n.4 (2000) (applying Rule 12(b)(6) to derivative complaint brought by policyholders of mutual insurance company and noting that court would assume such an action was available to policyholders because parties had litigated the matter as if it were a corporate law case).
Even assuming that GE is akin to the controlling shareholder in a traditional business corporation, the imposition of a fiduciary duty for EMLICO’s benefit makes little sense under the circumstances of this case, where GE is effectively the sole insured, shareholder and creditor of the company. “A mutual insurance company may be defined as a cooperative enterprise wherein the members constitute both insurer and insured, where the members all contribute, by a system of premiums or assessments, to the creation of a fund from which all losses and liabilities are paid, and wherein the profits are divided among themselves in proportion to their interest.” 43 Am.Jur.2d, Insurance §74 (2003).
The theory of mutuality is to align the interests of policyholders as owners with their interests as insurance customers by providing policyholders with an incentive to prevent injuries and minimize losses so as to keep premiums low and permit the insurance company’s surplus to remain high enough to warrant policyholder dividends or refunds of premium. Consequently, while a person who purchases an insurance policy from a stock insurance company is buying only a contract right in that insurance policy, a person who purchases an insurance policy from a mutual insurance company is buying both a contract right in that policy and an equity right in the company . . .
Silverman v. Liberty Mut. Ins. Co., 2001 WL 810157 at *1 (Mass.Sup.Ct. July 11, 2001) (Gants, J.). See also Ohio State Life Ins. Co. v. Clark, 274 F.2d 771, 775 (6th Cir.), cert. den., 363 U.S. 828 (1960) (noting that corporate insurance company with stock ownership operates for benefit of stockholders, who need not be policyholders, such that general principles of corporate law apply, whereas mutual insurance company is owned and managed by policyholders for their own benefit). Under Massachusetts law, a mutual insurance company is subject to only limited provisions of the Business Corporations Law, Chapter 156B. See G.L.c. 175, §30(3) (mutual insurance companies subject to G.L.c. 156B, §§2, 5, 7, 9-13, 16, 49, 52, 54-59 and 67).
The imposition of fiduciary duties in the corporate context “is designed for the protection of the entire community of interests in the corporation — creditors as well as shareholders.” Pepper v. Litton, 308 U.S. 295, 307 (1939); 12B Fletcher Cyclopedia of the Law of Corporations §5811 at 149 (2000). See, e.g., Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 528-29 (1997) (directors and officers of corporation have fiduciary duty to corporation and its shareholders); id. at 545 (controlling shareholders in close *70 corporation have fiduciary duty to minority shareholders). Thus, the general rules concerning fiduciary duty may be altered depending on the circumstances with respect to the community of interests affected by a transaction. See, e.g., In re Tufts Electronics, Inc., 746 F.2d 915, 917 (1st Cir. 1984) (fiduciary duty of disclosure under corporate opportunity doctrine inapplicable where close corporation had only one shareholder who was not obligated to prefer the corporation’s interests to his own in every action he took and could not fail to disclose to himself). Accord Pittman v. American Metal Framing Corp., 649 A.2d 356, 362 (Md.App.Ct. 1994) (even if action of sole shareholder was detrimental to corporation it was not breach of duty where it was in effect ratified by all shareholders and no creditors were prejudiced). For example, the weight of authority holds that a parent corporation does not owe a fiduciary duty to a wholly-owned subsidiary, which is created solely to be operated for the benefit of the parent and its shareholders, because there is only one substantive interest to be protected and no divided loyalty requiring special scrutiny of the actions by those in control. See, e.g., Sternberg v. O’Neil, 550 A.2d 1105, 1124 (Del. 1988); Westlake Vinyls, Inc. v. Goodrich Corp., 518 F.Sup.2d 902, 917 (D.Ky. 2007) Asarco, LLC v. America’s Mining Corp., 382 B.R. 49, 70 (D.Tex. 2007); Aviall, Inc. v. Ryder. Sys., 110 F.3d 892, 897 (2d Cir. 1997).
Where a corporation is insolvent, a fiduciary duty may arise on the part of controlling entities for the benefit of corporate creditors. See, e.g., Pittman v. American Metal Framing Corp., 649 A.2d at 362. Here, however, GE is EMLICO’s only creditor. See Commissioner of Ins. v. Electric Mut. Liab. Ins. Co., 429 Mass. 795, 796 (1999) (court properly declined to appoint Commissioner of Insurance as EMLICO’s receiver where GE was its only insured and thus no Massachusetts policyholder or creditor would benefit from Massachusetts receivership). Under the circumstances of this case, where GE is the sole policyholder, shareholder and creditor of EMLICO in connection with the disputed transaction, there was a unique confluence of substantive interests to be protected. Therefore, GE owed no fiduciary duty to EMLICO to refrain from making false representations to the Massachusetts Division of Insurance and the Bermuda authorities about EMLICO’s solvency in order to receive approval of a change in domicile for GE’s benefit in obtaining coverage of its environmental claims from EMLICO’s reinsurers.
Even if GE owed a fiduciary duty to EMLICO, the undisputed facts show that there was no breach of that duty because the redomestication did not harm EMLICO. See Eisenstein v. David G. Conlin, P.C., 444 Mass. 258, 267 (2005); Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 164, rev. den., 429 Mass. 1105 (1999) (injury or harm is essential element of breach of fiduciary duty claim). EMLICO’s liability to GE with respect to the environmental claims will ultimately be determined by a Massachusetts court, with OneB-eacon interposing on EMLICO’s behalf any coverage defenses possessed by EMLICO. As found by Judge Griesa, the appointment of the Joint Liquidators by the Bermuda Court benefitted EMLICO and CU because their settlement with the other reinsurers brought hundreds of millions of dollars into the EMLICO estate. That finding is binding on EMLICO in this case under the doctrine of collateral estoppel. Issue preclusion may be applied defensively against one who was a party to prior litigation by one who was not a parly to that litigation, if there was a final judgment on the merits in the prior adjudication, the issue in the prior adjudication is identical to the issue in the current adjudication, and the issue was treated as essential to the earlier judgment. Alba v. Raytheon Co., 441 Mass. 836, 841-43 (2004); Commissioner of the Dept. of Employment & Training v. Dugan, 428 Mass. 138, 142 (1998). Here, the issue of prejudice to CU from the redomestication was fully and fairly litigated by EMLICO in the Southern District proceedings, and the findings concerning prejudice were essential to the court’s ruling. In addition, the District Court decision is final for purposes of collateral estop-pel despite the pending appeal. See O’Brien v. Hanover Ins. Co., 427 Mass. 194, 200-02 (1998).
Similarly, to the extent that EMLICO claims that it owed a duty to its reinsurers which GE’s dominance caused it to breach, the Federal District Court has already determined that the redomestication to Bermuda did not prejudice CU, and that factual finding is entitled to binding effect on EMLICO under the doctrine of collateral estoppel. Thus, EMLICO cannot base its breach of fiduciary duty claim against GE on any harm to CU or other reinsurers. Finally, any claim that GE manipulated the Joint Liquidators in order to inflate the value of its environmental claims is precluded by Judge Griesa’s finding that GE did not control the Joint Liquidators in an inappropriate manner. EMLICO has not identified any other way in which its ability to resist GE’s claims has been prejudiced because of the redomestication. Therefore, even assuming the existence of a fiduciary duly owed by GE to EMLICO under the circumstances of this case, OneBeacon has no reasonable expectation of proving that GE’s conduct in connection with the redomestication breached such a duty or caused EMLICO harm.
II. Equitable Analysis of Redomestication Counterclaim
Finally, GE contends that OneBeacon, standing in EMLICO’s shoes, cannot seek equitable relief from EMLICO’s insurance obligations given EMLICO’s complicity in the allegedly wrongful redomestication. One who seeks equity must come with clean hands, and the doors of equity are closed to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper the other party’s conduct may have been. Amerada Hess Corp. *71 v. Garabedian, 416 Mass. 149, 156 (1993); Santagate v. Tower, 64 Mass.App.Ct. 324, 334 (2005); Fidelity Management & Research Co. v. Ostrander, 40 Mass.App.Ct. 195, 200 (1996).
The matter in which EMLICO seeks relief is its contractual dispute with GE over coverage for GE’s environmental claims. The equitable relief sought is a declaration that EMLICO is relieved of its contractual obligations based on GE’s alleged breach of fiduciary duty in orchestrating the redomestication to bolster its coverage claim. It is undisputed for purposes of this motion that EMLICO was complicit in deceiving the Massachusetts Commissioner of Insurance and Bermuda authorities about its solvency in connection with the redomestication. EMLICO should not be allowed to pursue a breach of fiduciary duty claim based on the redomestication because its own conduct with respect to that transaction was inequitable, deceptive or in bad faith. See Amerada Hess Corp. v. Garabedian, 416 Mass. at 156; Fidelity Management & Research Co. v. Ostrander, 40 Mass.App.Ct. at 200 (equity requires that party seeking equitable relief have acted fairly and without fraud or deceit as to controversy in issue). Cf. Flynn v. Haddad, 25 Mass.App.Ct. 496, 506, rev. den., 402 Mass. 1104 (1988) (no basis to deny partner repayment of money advanced to partnership where his fraudulent conduct with respect to deed to certain partnership property did not directly affect repayment claim). In addition, it would be manifestly inequitable and illogical to grant EMLICO relief from its contractual obligations with respect to GE’s environmental contamination claims when the Federal District Court denied such relief to CU, an innocent party who was not complicit in the wrongful redomestication.
For all these reasons, even if OneBeacon could establish the assumed facts relating to the redomestication, I conclude that it has no reasonable expectation of demonstrating a breach of fiduciary duty by GE warranting relief from EMLICO’s contractual obligations.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment of plaintiff General Electric Company on Intervenor-Defendant OneBeacon America’s Third Counterclaim as it Relates to EMLICO’s Redomestication to Bermuda is ALLOWED.

In connection with the redomestication, EMLICO transferred all its non-corporate life, homeowners and automobile insurance policies and all its non-GE corporate policies to an affiliate, Electric Insurance Company, which remained in Massachusetts.

This Court (Gants, J.) previously mled that New York law governs the resolution of the insurance coverage issues in this case [24 Mass. L. Rptr. 319 (Gants, Ralph D., J.)]. However, Massachusetts law governs the issue of breach of fiduciary duty. See Harrison v. NetCentric Corp., 433 Mass. 465, 471 (2001). In any event, the parties agree that there are no significant differences between New York and Massachusetts law on the issues raised by the present motion.