Roach, Christine M., J.
Plaintiff Jessica C. Rule, individually and on behalf of all similarly situated persons, brings this action against Massachusetts Mutual Life Insurance Company (MassMutual), claiming it used a false and deceptive February 2014 Proxy Statement (Proxy) to obtain its member-owners’ required approval of proposed By-law changes. Rule seeks monetary damages, as well as declaratory judgment related to the inspection of MassMutual’s books and records. Rule’s First Amended Complaint (Complaint) contains claims for: breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), breach of fiduciary duty (Count III), and injunctive or declaratory relief (Count IV).
MassMutual has moved to dismiss all claims. Rule moves by separate motion for declaratory judgment under G.L.c. 231A and Mass.R.Civ.P. 57, on her books and records claim. Following hearing March 4, 2015, and for the reasons that follow, MassMutual’s Motion to Dismiss is ALLOWED, and Rule’s Motion for Declaratory Judgment is DENIED.
Factual Allegations of Complaint
The following allegations taken from the Complaint are assumed to be true for purposes of this Motion.[2]
Parties
Rule is a resident of Natick, Massachusetts, and has owned a participating whole life policy from April 20, 1985 to the present, as well as a yearly renewable term life policy from April 2, 1987, to at least 2006. Connecticut Mutual Life Insurance Company, which merged with MassMutual in 1996, initially issued these policies. MassMutual, a domestic mutual life insurance company with its headquarters in Springfield, Massachusetts, is one of the largest life insurers in the United States with $167 billion in assets and covers millions of members nationwide. The company was founded in 1851 as a mutual insurer owned by its members who elect its board of directors and have the authority to approve changes to its corporate Charter and By-laws. Complaint, paras. 5-7.
Proxy Allegations
Rule contends a February 2014 Proxy issued by Mass Mutual is misleading, in violation of fiduciary duties owed to her and other members (policyholders). The core Proxy statement at issue reads as follows: “The Company believes that adoption of the proposed amendment to the By-laws (the ‘Proposed Amendment’) will make the By-laws consistent with the Company’s current practices and business necessities and will bring the By-laws in alignment with widely accepted corporate governance best practices.” Defendant’s Motion, Exhibit B, at page 10. Rule asserts the Proxy is materially misleading because it recommends the proposed By-law changes without adequately disclosing the potential adverse impact to its members, and contravenes best practices of corporate governance. Complaint, paras. 11-12.
According to Rule, the Proxy fails to disclose the impact of the following proposed Bylaw changes that “weaken the members’ control over the mutual insurer”: changes to the board of directors meeting quorum and minimum board size; changes to the minimum notice requirement for board meetings; eliminating the mandatory retirement age of 70 for the board; requiring members who sign a special request calling for a special meeting to pay MassMutual’s costs of holding the meeting; permitting a meeting chair to *278 adjourn meetings for any reason if a new meeting is held within thirty days; and changes to the procedures for future amendments to the By-laws. Complaint, para. 13.
Process Allegations
The Complaint alleges MassMutual’s conduct toward its members discouraged participation in the annual meeting and precluded an informed vote. Over two million members were eligible to attend MassMutual’s April 9, 2014 annual meeting and to vote on the By-Law changes. Rule alleges that of the approximately 40 individuals at the meeting, only two members who attended appeared to be unafñliated with MassMutual as a director, officer, or employee. Rule’s attorney represented her at the meeting. Her attorney and another independent member had to go through security and were photographed before being allowed into the meeting. The meeting lasted approximately twenty-two minutes and was allegedly without content other than a statement made on Rule’s behalf opposing the Board’s deliberative process and the merits of the proposed amendment to the By-laws, and a similar opposition statement by the other indepen-dentmember in attendance. Complaint, paras. 14-15.
MassMutual has published rules governing its annual meetings which Rule believes were intended to limit the meaningful participation by its member-owners. For example, MassMutual permits any member to speak for only three minutes on any one topic, and for a total of six minutes during the entire meeting. Rule alleges that what she describes as a lack of any meaningful input or deliberative process, along with MassMutual’s issuance of the Proxy, is contrary to the best practices in corporate governance and is misleading and deceptive. Complaint, paras. 16-17.
Records Allegations
Rule further contends members of a mutual insurance company are its owners, with the same entitlement to review a mutual company’s books and records as the stockholders of a stock company when acting in good faith for the purpose of advancing the interest of the corporation. In a letter dated March 20, 2014 to Mark D. Roellig, MassMutual’s executive vice president and general counsel, Rule’s attorney expressed her concerns regarding the proposed By-law changes, and requested copies of all documents concerning the deliberations of the Board of Directors and their approval of the proposed By-law changes. Rule sought all documents that concerned the claim in the Proxy distributed to members that the Proposed By-law changes would bring the By-laws into alignment with widely accepted corporate governance best practices. In a letter dated March 27, 2014, Scott T. Lashway, MassMutual’s vice president and assistant general counsel, responded that Rule’s request was not in good faith, but nonetheless consented to allowing Rule’s attorney to review certain minutes of the Board of Directors’ meetings at a mutually convenient location. Complaint, paras. 20-22.
On March 31, 2014, MassMutual allowed Rule’s attorney to inspect, but not copy, five “mostly redacted” sets of minutes from meetings of MassMutual’s Board of Directors and Corporate Governance Committee. MassMutual did not permit Rule’s attorney to inspect any of the related or supporting materials or exhibits. Complaint, para. 23. Following review of the disclosed material, Rule’s attorney requested “copies of additional documents, reports, minutes and emails concerning the CGC’s and/or board’s deliberative process between December 10, 2013 and Januaiy 23, 2014 . . .” Complaint, para 25. MassMutual has not complied with this request and denies that its members are entitled to inspect and copy its books and records.
Discussion
MassMutual’s Motion to Dismiss
To survive a Rule 12(b)(6) motion, a complaint need not set out detailed factual allegations, but must contain more than mere labels and conclusions. The complaint should “raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations omitted). The court determines whether the complaint sets forth allegations “plausibly suggesting (not merely consistent with) an entitlement to relief.” Id. (internal quotations and citations omitted). I take the Counts of Rule’s Complaint in turn.
Breach of Contract and Implied Covenant of Good Faith and Fair Dealing
Counts I and II are claims for breach of contract. Rule alleges MassMutual entered into a contract with her and other MassMutual members in which, in return for the payment of insurance premiums, Mass-Mutual would perform its obligations under the policies until each was cancelled or expired. Rule claims the insurance contracts granted the policy-holding members governance rights in MassMutual, including the right to cast an informed vote based on an accurate proxy. Rule believes that MassMutual, acting at the direction of its directors, breached this duty by disseminating a materially false and deceptive Proxy in order improperly to secure the required approval for the proposed By-law changes.
Rule’s life insurance policy at issue dated April 20, 1985 (Policy Number: 4,446,245) expressly provides the right of the insured to vote as follows: “While this policy is in force, the insured is a member of the Company and has the right to vote in person or by proxy at all meetings of the Company.” The process provisions of the February 2014 Proxy are reproduced in the footnote below.[3]
Rule’s breach of contract allegations in both Counts I and II fail to state claims upon which relief can be granted. Singarella v. Boston, 342 Mass. 385, 387 *279 (1961) (recognizing that to prevail on a breach of contract claim, the plaintiff must prove an agreement supported by consideration, that the plaintiff was ready, willing, and able to perform, that the defendant breached the contract, and that the plaintiff suffered damages for the breach). Rule claims MassMutual interfered with the governance rights it provided to her through her life insurance policy by issuing a false and deceptive proxy. Yet, Rule acknowledges in her Complaint her attorney represented her at MassMutual’s April 9, 2014 annual meeting and orally presented her position in opposition to the proposed amendment to the By-laws. The insurance policy merely provides that an insured “has the right to vote in person or by proxy at all meetings.” MassMutual noted in the Proxy that it welcomed and encouraged attendance at the annual meeting and provided its members with an opportunity to vote via the internet, telephone, or mail. Nothing in the Complaint plausibly suggests an entitlement to relief by reason ofinteiference with Rule’s ability to cast a vote on the proposed amendment to the By-laws.
Count II also focuses on dissemination of the Proxy itself. Rule claims MassMutual breached the implied covenant of good faith and fair dealing by disseminating a false and deceptive Proxy in order improperly to secure the required approval of its members for the proposed changes to the By-laws. Every contract in Massachusetts is of course subject to an implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473 (1991). The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of one another in their performance of the contract. T.W. Nickerson, Inc. v. Fleet Bank, 456 Mass. 562, 570 (2010); Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). A breach of the implied covenant occurs when one party violates the reasonable expectations of the other, that is, interferes with the other’s ability to enjoy the fruits of the contract. Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287-88 (2007). The scope of the implied covenant is only as broad as the contract that governs the particular relationship; the covenant “does not supply terms that the parties were free to negotiate, but did not . . . nor does it ‘create rights and duties not otherwise provided’ for in the contract.” Chokel v. Genzyme Corp., 449 Mass. 272, 276 (2007).
As discussed below, the Proxy cannot fairly be characterized as false or deceptive on its face as a matter of law. And, the insurance policy did not impose any duties on MassMutual related to the content of the Proxy, but rather simply provided members with voting rights. Count II fails to plead how or why Mass Mutual’s performance of its meeting and voting duties compromised Rules voting rights. Thus, nothing in the Complaint plausibly suggests an entitlement to relief pursuant to the implied covenant on this theory, and this portion of Count II also must be dismissed.
Breach of Fiduciary Duty
In Count III, Rule contends MassMutual owes her and its other members fiduciary duties of loyally and full disclosure, including a fiduciary duty to disseminate a true and accurate proxy to secure the informed vote of its members. Rule contends MassMutual breached these duties by disseminating a materially false and deceptive Proxy. MassMutual argues that Rule’s Complaint does not identify any particular undisclosed material fact concerning the proposed amendment to the By-laws and therefore fails to state a claim upon which relief can be granted.
To establish a breach of fiduciary duty, there must be a duty owed to the plaintiff by the defendant and injury to the plaintiff proximately caused by the breach. Estate of Moulton v. Puopolo, 467 Mass. 478, 492 (2014). Massachusetts appellate courts have not yet answered the question of whether a mutual insurer owes a fiduciary duly to its members in connection with the dissemination of a proxy statement. One Superior Court decision, however, has noted that “[a] mutual insurer has a duty to provide its policyholders with [a] full and honest disclosure of material facts relating to a transaction that requires policyholder approval.” Silverman v. Liberty Mut. Ins. Co., 13 Mass. L. Rptr. 303, 2001 WL 810157 at *16 (Mass.Super.Ct., July 11, 2001) (Gants, J.). See also, General Electric Co. v. Lines, 26 Mass. L. Rptr. 66, 2009 WL 2393935 at *5 (Mass.Super.Ct., Aug. 3, 2009) (Hinkle, J.) (discussing reported cases involving fiduciary duty of mutual insurer to policyholders). “An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.” TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976); Marram v. Kobrick Offshore Fund Ltd., 442 Mass. 43, 50 (2004) (test of whether an omission is material is objective; there must be a substantial likelihood disclosure of the omitted fact would have been viewed by reasonable investor as having significantly altered total mix of information made available); Gantler v. Stephens, 965 A.2d 695, 710-11 (Del. 2009) (fiduciary duty owed by directors of Delaware corporation fully and fairly to disclose all material information within board’s control attaches to proxy statements).
Assuming MassMutual owed its members a duty fully to disclose material facts relating to the Proxy, I cannot conclude that Rule has adequately pleaded a claim for breach of that duty in the circumstances of this case. Rule claims the Proxy is materially misleading in misrepresenting that the proposed changes to the By-laws would improve corporate governance—because in her view the changes would actually worsen corporate governance. Rule also believes the Proxy fails to disclose the Board of Directors did not adequately review the changes before recommending them. This latter allegation is based on further allegations that: MassMutual managers proposed most of *280 the changes; bypassed a relevant Board subcommittee in the process; did not retain independent advisors; and adopted the proposed changes to the By-laws in a fifteen minute conference call on Januaiy 23, 2014. Complaint, para. 23; Opposition, at pages 5-12.
Assuming all of these alleged facts to be true, however, the Proxy was neither materially misleading nor lacking in disclosure as a matter of law. In addition to the language quoted above the Proxy stated: ‘The Proposed Amendment generally provides the Board of Directors with greater flexibility to act quickly and efficiently, and enhance the Board of Directors’ ability to act in the interests of the Company and its members.” The Proxy provided the full redline version of the proposed amendment to the By-laws. Mass Mutual’s members were thus easily able to review the language the company sought to add to or delete from the By-laws. The Proxy encouraged all members to read the By-laws, including the Proposed Amendment, in its entirely prior to voting on the proposal. The pleading on its face reveals MassM-utual did not attempt to obfuscate the changes it sought to the By-laws. Compare, R.S.M., Inc. v. Alliance Capital Management Holdings, L.P., 790 A.2d 478, 503-05 (Del.Ch. 2001) (full text of an agreement at issue was provided, but not a “redlined” version; nonetheless, statement in proxy was an opinion, and that aspect of disclosure claim dismissed). Nothing prevented MassMutual’s members from hiring counsel or doing their own research about the proposed changes before drawing their own conclusions on whether to vote for the proposed amendment.
Of greatest significance, however, the Proxy stated MassMutual “believes” the adoption of the proposed changes will bring the By-laws “in alignment with widely accepted corporate governance best practices.” This language quite plainly articulated MassMutual’s opinion; alignment with best practices was not presented as fact. It was up to MassMutual’s members to determine for themselves if they agreed with this opinion expressed by the company. R.S.M., Inc., 790 A.2d at 505 (“This issue reduces in my view to a difference of opinion, which investors could resolve for themselves based on the facts that were disclosed”). Plaintiff clearly does not.[4] But that disagreement does not a cause of action make.
Rule also takes issue with the fact that the Board approved the amendment to the By-laws after a fifteen minute conference call. Yet, the Proxy made no specific representations about the length of the Board’s final collective deliberations in consideration of the amendment to the By-laws. Rule notes in her Complaint that during the January 23, 2014 conference call, Mark D. Roellig, MassMutual’s General Counsel and Executive Vice President, stated that management hired outside counsel to provide an external perspective of what was both standard and best in class language with respect to a mutual insurance company’s By-laws. Complaint, at para. 23. Thus the pleading itself reflects the conference call was not the only action undertaken by the company making up what it characterized as a “comprehensive review.”
Finally, Rule has not adequately pleaded an injury to her as a result of MassMutual’s purported breach of fiduciary duly. Estate of Moulton v. Puopolo, 467 Mass. at 492. Rule was fully aware of the proposed amendment to the By-laws, requested to inspect documents at Mass-Mutual, directed counsel to express her views at the April 9, 2014 annual meeting, and presumably cast an informed vote against the proposed amendment. The Complaint fails to specify any injury resulting from this sequence of events that could plausibly entitle Rule to relief for breach of fiduciary duty. For this additional reason, Count III must be dismissed.
Declaratory Relief
Rule seeks injunctive and declaratory relief in Count IV that “she and other members of MassMutual are entitled as a matter of common law to inspect the books and records of MassMutual as a general matter, and a declaration that the requested books and records be made available for immediate inspection and copying by Plaintiff.” Complaint, at para. 56. The Complaint alleges MassMutual allowed Rule to inspect, but not to copy, some of MassMutual’s (redacted) books and records relating to the By-law amendment before she filed this action. The parties have fully briefed the issue raised by Count IV via Rule’s cross motion for declaratory judgment, which I address below.
Rule’s Cross Motion for Declaratory Judgment
Rule has filed a Motion for Declaratory Judgment seeking a declaration[5] pursuant to G.L.c. 231A that she has a right, under Massachusetts common law, to inspect certain MassMutual books and records as a policyholder and member-owner of the company.[6] In March 2014, Rule sought to inspect books and records of MassMutual relating to her concerns regarding the Proxy. She instead was offered the opportunity to inspect minutes of the Board of Directors meetings that included discussions of the proposed amendments. Following such inspection, in March 2014 counsel requested “copies of additional documents, reports, minutes and emails concerning the CGC’s and/or board’s deliberative process between December 10, 2013 and January 23, 2014 .. .’’which request was denied by MassMutual.
Rule relies on Varney v. Baker, 194 Mass. 239, 240 (1907), to support her argument that she possesses the common law right to inspect. In Varney, the Supreme Judicial Court determined that:
The stockholders of a corporation are the equitable owners of its assets, and the officers act in a fiduciary relation as agents of the corporation and of the stockholders. They should be ready to account to the stockholders for their doings at all reasonable times, and the stockholders have a right to inspect their records and accounts, and to ascer *281 tain whether they are faithful, honest and intelligent in the performance of their duties. There is no good reason why the stockholders, acting in good faith for the purpose of advancing the interest of the corporation and protecting their rights as owners, should not be permitted to examine the corporate property, including the books and accounts.
194 Mass. at 240. Rule acknowledges Massachusetts courts have yet to address the question of whether this common law right of stockholders extends to members or policyholders of a mutual life insurance company, but contends that it does. She argues the absence of a statute expressly addressing mutual insurance company policyholders does not imply a legislative intent to withhold such a right.
MassMutual first contends Rule’s request for a declaratory judgment does not comply with G.L.c. 231 A, §1, which is limited to cases in which an actual controversy has arisen and is specifically set forth in the pleadings ..." MassMutual argues Rule’s general request for a declaration regarding her rights to inspect and copy MassMutual’s books and records in the future will not resolve the current action, because further litigation, as to whether Rule is seeking inspection for a proper purpose, would be required. Second, MassMutual argues members of a mutual insurer do not possess the same right of inspection as stockholders of a corporation. MassMutual cites New York authority, People ex rel. Venner v. New York Life Ins. Co., 111 A.D. 183, 186-87 (N.Y.A.D. 1 Dept. 1906), which held that the common law right does not extend to policyholders of a mutual life insurance company. The Vernier court explained: ‘The relation between a policyholder and the mutual company in which he is insured is primarily one of contract measured by the terms of his policy . . . There are many rights which a stockholder has in relation to his company which a policyholder does not possess .. . It does not seem to me that the analogy between policyholders and stockholders is sufficiently strong to extend to policyholders, by reason of such claimed analogy, rights which heretofore have been conceded to stockholders as such.” Id. Third, MassMutual contends the Massachusetts Legislature has expressed its intent not to impose such an inspection obligation on mutual life insurers. Following careful review, I conclude Rule’s Motion must be denied.
There is no Massachusetts authority to support Rule’s argument. A “mutual company” is a “company that is owned by its customers rather than by a separate group of stockholders.” Black’s Law Dictionary 319 (9th ed. 2009).[7] As a mutual life insurance company Mass Mutual is subject to various inspection and annual financial reporting requirements imposed by the Commonwealth. G.L.c. 175, §§4, 25. Policyholders have limited contractual rights to participate in the administration of their company, primarily governed by the policies themselves and Massachusetts insurance laws. G.L.c. 175, §94 (discussing voting rights of members). In the 108 years since our Supreme Judicial Court decided Varney, there has been no appellate case law which suggests that a policyholder of a mutual life insurance company has a right to inspect the company’s books and records.
Rule’s insurance policy granted her “the right to vote in person or by proxy at all meetings of the Company.” No language in the policy gives Rule the right to inspect books and records of MassMutual upon request. Nor has the Legislature provided policyholders of a mutual life insurance company with such rights. Contrast: G.L.c. 175, §78 (granting certain statutory inspection of records for proceedings by mutual fire insurance companies); G.L.c. 175, §59 (granting certain statutory inspection to stock insurers, with exceptions); G.L.c. 156B, §32 (providing stockholders of a corporation with inspection rights of certain documents); G.L.c. 156D, §16.02 (providing shareholders of business corporations with certain inspection rights).[8]
In contrast, the Legislature has provided broad inspection rights to the Massachusetts Commissioner of the Division of Insurance over such companies. The Commissioner is required to inspect MassMutual at least once every five years, whenever she “determines it to be prudent,” or upon the request of five or more policyholders who make a request by affidavit with specific reasons why they believe the “company is in an unsound condition.” See G.L.c. 175, §4(2). The Commissioner also may specifically inspect and examine “the equity of . . . [MassMutual’s] dealings with its policyholders.” Id. The Legislature may well have deemed this level of government oversight sufficient to protect the interests of a mutual life insurance company’s members. Because Count IV of Ride’s Complaint fails to state a claim, her cross motion must be DENIED.
Conclusion
Defendant Massachusetts Mutual Life Insurance Company’s Motion to Dismiss Plaintiff Jessica C. Rule’s First Amended Complaint (Paper 13) is ALLOWED, and Plaintiffs First Amended Complaint is DISMISSED;
Plaintiff Jessica C. Rule’s Motion for Declaratory Judgment (Paper 14) is DENIED; and

A declaration shall enter that in the circumstances of this case, Plaintiff Jessica C. Rule, as a policyholder and member of MassMutual, has no right to inspect certain MassMutual books and records under Massachusetts common law.

 MassMutual has submitted an appendix of exhibits in connection with its Motion. For purposes of Rule 12(b)(6) review, the court may consider facts of which judicial notice may be taken, as well as any documents of which the plaintiff had notice, or on which it relied in framing the complaint. Golchin v Liberty Mut. Ins Co., 460 Mass. 222, 224 (2011); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004); Jarosz v. Palmer, 436 Mass. 526, 530 (2002).

 Proxy Statement
This proxy statement relates to the Annual Meeting of Massachusetts Mutual Life Insurance Company (MassMutual or the Company), which will be held at its home office, 1295 State Street, Springfield, Massachusetts, on Wednesday, April 9, 2014, at 2:00 p.m. local time. At the Annual Meeting, those present in person or by proxy will be asked to vote on the election of four directors: one for a three-year term and three for a four-year term. Members will be asked to vote an amendment to the Company’s By-laws.
Who May Vote
Voting rights of MassMutual’s members are determined in accordance with the Massachusetts Insurance Law. If you are insured under an individual policy of life or endowment insurance issued by MassMutual, you are a member of the Company and are entitled to one vote . . .
Voting By Proxy
We welcome and encourage your attendance at the Annual Meeting. If you are unable to attend, please vote via one of the methods below:
Internet—visit www.proxyvoting.com/mmfg;
Telephone—call 1-800-240-6326 toll-free;
Mail—sign, date and return your proxy as soon as possible. In order to be counted at the meeting, your proxy card must reach MassMutual by April 2, 2014.
You may revoke your proxy at any time before the Annual Meeting is held.
Vote Required—Proposed Amendment to the By-laws
The approval of a proposed amendment to the Company’s By-laws requires the affirmative vote of two-thirds of the number of member votes cast in person or by proxy at the Annual Meeting. The Company has recently undertaken a comprehensive review of the Company’s By-laws (the “Bylaws”) with the goal of modernizing them . . .
Summary
The following is a brief summary of the Proposed Amendment. The description of the Proposed Amendment set forth below is qualified in its entirety by reference to the complete By-laws incorporating the Proposed Amendment, a copy of which is set forth following this summary, with additions under-scored and deletions struck through to illustrate each of the proposed changes. We encourage all members to read the By-laws, including the Proposed Amendment, in its entirety prior to voting on this proposal.
Proxy at 2-11 (emphasis in original).

 See, for example, Opposition at 5: “Contrary to what the Proxy states, the Proposed By-laws have the cumulative effect of further empowering and entrenching current, senior management and their Board allies at the expense of transparency and member-owner democracy.”

 Rule characterizes the specific declaration she is seeking in slightly different forms throughout the pleadings In Paper 14 (the Motion itself), Rule requests that the court. “Grant Plaintiff a declaratory judgment holding that Varney v. Baker, 194 Mass. 239 (1907) and progeny govern a request to inspect and copy the books and records of a Massachusetts domestic mutual life insurance company when requested by a member(s) of the mutual insurer.”

 Rule moves for a declaratory judgment under G.L.c. 231A and Mass.R.Civ.P. 57. The parties treat it in part as a motion for summaryjudgment, both relying on a Joint Appendix, and Rule maintaining there is no dispute of material fact. Reply at page 5.1 do not reach the issue of Rule’s purpose, however, because I rule that she fails to state a claim as a matter of law.

 More specifically, a “mutual insurance company” is an insurer whose policyholders are its owners, as opposed to a stock insurance company owned by outside shareholders." Its “policyholders are both insurers and insureds because they pay premiums into a common fund, from which claims are paid.” Mutual insurance companies are “organized by a number of persons for the purpose of transacting some particular insurance business ... A company is a mutual one when the persons constituting the company contribute either cash or assessable premium notes, or both, to a common fund, out of which each is entitled to indemnity in case of loss. The distinguishing feature is mutuality, evidenced by the co-operation of members, uniting for that purpose, each taking a proportionate part in the management of its affairs and being at once insurer and insured, contributing to a fund from which all losses are paid .. . Democratic ownership and control is a fundamental characteristic of a mutual insurance company.” Black’s Law Dictionary 876 (9th ed. 2009), citing 18 John Alan Appleman, Insurance Law and Practice §10041, at 79-80 (1945).

 The statutory and common-law rights are subject to a showing of proper purpose. G.L.c. 156D, section 16.02(c); Albee v. Lamson & Hubbard Corp., 320 Mass. 421, 424 (1946) (“A stockholder who is acting in good faith for the purpose of advancing the interests of the corporation and protecting his own interest as a stockholder is generally entitled to examine the corporate records and accounts. But he has no such right to an examination if his purpose be to satisfy his curiosity, to annoy or harass the corporation, or to accomplish some object hostile to the corporation or detrimental to its interests . . . The burden of proof was upon the petitioner to allege and prove his good faith and a proper purpose”); Varney, 194 Mass. at 240-41 (“Of course the right at common law is not absolute, so that it can be exercised for mere curiosity, or for merely speculative purposes, or vexatiously. If the court is appealed to for the enforcement of the right, a sound discretion will be exercised to determine whether the petitioner is acting for an honest purpose, not adverse to the interests of the corporation. The court will consider whether his desire for an examination is reasonable, having reference to the interests of the corporation and his personal interest as a member of it”); Opposition, at pages 17-19.