FIDELITY MANAGEMENT & RESEARCH COMPANY & others[1] vs.
PATRICIA OSTRANDER.

No. 94-P-799.

Suffolk. May 16, 1995. - March 21, 1996.

Present: KASS, SMITH, & GREENBERG, JJ.

*Securities,* Sale. *Fiduciary. Collateral Estoppel. Practice, Civil,* Summary judgment, Failure to raise issue, Discovery, Disqualification of judge. *Jurisdiction,* Equitable. *Taxation,* Income tax. *Judge.*

In a civil action in which mutual fund trust management companies sought an order to compel a former employee to disgorge profits received from an investment made in violation of the employee's common law fiduciary duty of loyalty, following criminal proceedings wherein the employee had been convicted of violations of the Investment Company Act, rules of the Securities and Exchange Commission and 18 U.S.C. § 1954, the judge correctly ruled that the former employee was collaterally estopped, based on the criminal convictions that were directly related to the civil controversy, to deny that she had violated her fiduciary duty [198-199]; that no deduction from the disgorgement of income taxes the former employee had paid on the profits was allowable in the circumstances [201-202]; and that he need not recuse himself on account of his family's financial investments, that could not have been remotely affected by the outcome of the case [202-203].

This court declined to consider arguments raised for the first time on appeal. [199-201]

CIVIL ACTION commenced in the Superior Court Department on April 13, 1990.

The case was heard by *Patrick J. King,* J., on a motion for partial summary judgment.

*Deborah J. Jeffrey,* of the District of Columbia, for the defendant.

*Richard R. Lavin (Karen M. O'Toole* with him) for the plaintiffs.

---

[1]Fidelity Management Trust Company, Fidelity Puritan Trust, and Fidelity Devonshire Trust.

SMITH, J. The plaintiffs, Fidelity Management & Research Company, Fidelity Management Trust Company, Fidelity Puritan Trust, and Fidelity Devonshire Trust (collectively Fidelity) brought a complaint against a former employee, Patricia Ostrander. The complaint, later amended, arose as a result of an investment that Ostrander made for herself while she was employed as a portfolio manager for certain mutual funds and trust accounts at Fidelity. The amended complaint sought an order to compel Ostrander to disgorge her profits from that transaction. The counts in the amended complaint were as follows: count I alleged that Ostrander, by making the transaction, violated her common law fiduciary duty of loyalty to Fidelity; count II alleged that Ostrander violated section 17(e) of the Investment Company Act (ICA)[2] ; count III alleged violation of section 17(j) of the ICA and rule 270.17j-1 of the Securities and Exchange Commission (SEC)[3] ; and count IV alleged that Ostrander violated her employment contract with Fidelity.

After the amended complaint was filed and Ostrander had filed responsive pleadings, she was indicted by a Federal grand jury in New York. The three-count indictment charged Ostrander with accepting an illegal gratuity in violation of section 17(e) of the ICA, receiving a thing of value in connection with a pension plan investment in violation of 18 U.S.C. § 1954 (1994), and failure to report securities transactions in violation of section 17(j) of the ICA and SEC rule 270.17j-1. The Superior Court allowed Ostrander's motion to stay the civil action pending the outcome of the criminal proceedings against her.

A jury convicted Ostrander on all three counts after a two-week trial in the United States District Court for the Southern District of New York. Her conviction was affirmed by the United States Court of Appeals for the Second Circuit.

Following Ostrander's conviction and sentence, a Superior Court judge removed the stay of the proceedings, and Fidel-

[2]Title 15 U.S.C. § 80a-17(e) (1994) prohibits a person, while acting as an agent for mutual funds, from receiving outside compensation in connection with the purchase and sale of securities on behalf of the mutual funds.

[3]Title 15 U.S.C. § 80a-17(j) (1994), and SEC rule 17 C.F.R. § 270.17j-1 (1980), require a person such as Ostrander to disclose to the mutual fund or its advisor all securities in which he or she has any direct or indirect beneficial interest.

ity filed a motion for partial summary judgment on counts I through III of its amended complaint. After a hearing on the motion, another Superior Court judge granted partial summary judgment and ordered Ostrander to disgorge her profits.[4] In his memorandum of decision, the judge set forth certain facts taken from the materials submitted to him by the parties in regard to the summary judgment motion. We supplement them with other undisputed facts taken from the same materials.

In 1970, Ostrander was hired by Fidelity to work as a bond specialist. She subsequently worked as a portfolio manager for certain Fidelity mutual funds and trust accounts. In her role as a portfolio manager, she was responsible for making investment decisions. Throughout the 1980's, up to 1987, when she left Fidelity, Ostrander bought and sold, on behalf of Fidelity, substantial amounts of high yield, high risk corporate debt securities known as junk bonds. She made the purchases and sales through Michael Milken, then head of the high yield bond department at the now defunct firm of Drexel Burnham Lambert, Inc. (Drexel).

The transaction which became the subject of Fidelity's complaint occurred in 1985. Kohlberg Kravis Roberts & Co. (KKR), a New York investment firm, formed SCI Holdings, Inc. (SCI), in order to arrange a so-called "leveraged buyout" of Storer Communications (Storer), a broadcast and cable television company. KKR retained Drexel to help raise financing to close the sale. KKR's acquisition of Storer was to be financed by, among other things, the issuance by SCI of 1.2 billion dollars in debt securities and 261 million dollars in preferred stock. As part of the financing, warrants to purchase SCI common stock at the original offering price were also included. The warrants were owned by a limited partnership, SCI Equity Associates, L.P. (SCI Equity), with KKR as the general partner. Drexel had sole discretion as to the distribution of the warrants.

After the Storer deal closed on December 5, 1985, Drexel resold the warrants to Drexel customers by way of a partner-

---

[4]The judge granted summary judgment on count I (breach of fiduciary duty). He ruled that there was no need to decide counts II and III (violations of the ICA) because they were duplicative of count I. The judge later dismissed count IV (breach of contract), and final judgment was entered in favor of Fidelity.

ship, MacPherson Investment Partners (MacPherson), created especially for the sale of the SCI Equity warrants.

In December, 1985, Ostrander purchased approximately ninety-five million dollars worth of the bonds and preferred stocks from Drexel on behalf of Fidelity. Milken then offered Ostrander an opportunity to invest personally in the SCI Equity warrants in the form of an interest in MacPherson. The warrants were not available for sale to the general public. Rather, they were sold to parties involved in the purchase of the securities which generated the funds for the Storer leveraged buy-out. Ostrander paid $13,200 to acquire an interest in MacPherson. Ostrander made the purchase under the name of Wishingstone Investments, a limited partnership that she had formed sometime before Milken called. She did not disclose her investment to Fidelity. Ostrander received a net profit of $741,486 from her investment. The entire net profit, however, was not actually distributed to her. She received $589,560 of the net profit, and the remaining $151,926 was retained by MacPherson in order to cover any contingent liabilities.

In his memorandum of decision in which he granted summary judgment, the judge ruled on count 1 (breach of fiduciary duty) that Ostrander was collaterally estopped from relitigating the facts which were proved at her criminal trial. The judge stated that "[t]he finding of the Federal jury that Ostrander knowingly accepted a gratuity from Milken in connection with the purchase of securities on behalf of Fidelity establishes a breach of Ostrander's duty of undivided loyalty to Fidelity as a matter of law." The judge also rejected Ostrander's claim, raised for the first time at the hearing on the motion, that Fidelity should be estopped on equitable grounds from recovery because Fidelity's personnel manual encouraged Ostrander to do what she did.

On appeal, Ostrander claims that the judge committed error in (1) ruling that Ostrander was collaterally estopped, based on her prior criminal conviction, from denying that she had violated her fiduciary duty to Fidelity, (2) failing to allow Ostrander to deduct from the disgorgement the income tax she had paid on her investment profits, and (3) declining to recuse himself because he was a shareholder in certain Fidelity mutual funds.

1. *The judge's ruling on summary judgment.* Ostrander

claims that the judge committed error in granting partial summary judgment because in this civil matter, in contrast to the criminal charges, she had available to her equitable defenses of acquiescence and ratification together with a procedural right to take discovery in support of those defenses. She also claims that there were genuine issues of material fact regarding Fidelity's abandonment of its alleged compliance policies on which, according to Ostrander, Fidelity appears to rely in its claims against her.[5]

a. *The judge's ruling that Ostrander was collaterally estopped by her criminal conviction.* In support of its summary judgment motion, Fidelity argued that, as a result of her criminal conviction, Ostrander was collaterally estopped from denying that she had violated her common law fiduciary duties to the Fidelity mutual funds and trust accounts. Fidelity also contended that Ostrander's criminal conviction established her liability to Fidelity for violations of § 17(e) and § 17(j) of the ICA. The judge agreed with Fidelity's argument.

Ostrander was convicted of a crime that was directly related to the controversy in issue. It was appropriate, therefore, to apply collateral estoppel.

"[A] party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution." *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 742 (1985). The use of collateral estoppel is permitted in cases like this one where the plaintiff could not have joined the criminal prosecution of the defendant and thus "cannot properly be charged with sitting back and avoiding the costs of participation in on-going litigation, and then reaping a benefit from the resulting judgment." *Id.* at 745. Furthermore, in light of the criminal sanctions she faced, Ostrander "had every incentive to defend the prosecution vigorously . . . and to take an appeal, which [s]he did." *Ibid.*

b. *Ostrander's claim that her defenses prevented summary*

---

[5]Ostrander also alleges that the Federal judge who presided at her criminal trial ruled, as matter of law, that Fidelity was not entitled to any of Ostrander's profits. This claim is a gross overstatement of what the judge said. He made no ruling that Fidelity was not entitled to disgorgement but rather chose not to involve the court in that matter, leaving decisions regarding restitution "for the civil suits." Therefore, we do not further consider this argument.

*judgment.* Ostrander's argument that summary judgment should not have been granted because, unlike the criminal proceedings against her, she had available to her the equitable defenses of acquiescence and ratification, is without merit for several reasons.

At the hearing on the summary judgment motion, Ostrander did not advance the legal theories that she now offers as to why the judge should not have granted summary judgment. We "will [not] consider theories or issues raised for the first time on appeal." Smith & Zobel, Rules Practice § 56.10 (1977). We also note that many of the facts that Ostrander uses to support her new theories were not before the motion judge. "Reliance on facts not before the motion judge is improper. In our review of a motion for summary judgment we are 'confined to an examination of the materials before the court at the time the rulings were made.' " *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.*, 399 Mass. 886, 889-890 n.9 (1987), quoting from *Voutour* v. *Vitale,* 761 F.2d 812, 817 (1st Cir. 1985), cert. denied sub nom. *Saugus* v. *Voutour,* 474 U.S. 1100 (1986). See also *Custody of a Minor,* 375 Mass. 733, 736 n.1 (1978).

Even were we to reach Ostrander's claim that she was denied the opportunity to assert certain equitable defenses, she fares no better. " '[S]he who comes into equity must come with clean hands' . . . . [T]hus 'the doors of equity' are closed 'to one tainted with inequitableness or bad faith relative to the matter in which [s]he seeks relief, however improper may have been the behavior of the' other party." *United States* v. *Perez-Torres,* 15 F.3d 403, 407 (5th Cir. 1994), quoting from *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814 (1945). "[W]hile equity does not demand that its suitors shall have led blameless lives' . . . as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Mach. Co.,* 324 U.S. at 814-815.

Because Ostrander was convicted of a crime related to the controversy in issue, it can be said, as matter of law, that she has unclean hands. The matter in which Ostrander seeks relief is her retention of the profits she received as the result of an illegal investment, and as to this she is tainted with a serious breach of faith, by reason of being convicted of know-

ingly and wilfully accepting unlawful compensation. See *United States* v. *Perez-Torres, supra* at 407. The equitable defenses of acquiescence and ratification were, therefore, unavailable to Ostrander.

c. *Ostrander's claim that she was denied her right to discovery.* Ostrander argues that she was denied her right to discovery "by the erroneous and premature award of summary judgment." We do not consider this argument because Ostrander did not raise it in the Superior Court at the hearing on the motion. *Edinburg* v. *Massachusetts Mut. Life Ins. Co.,* 22 Mass. App. Ct. 923, 924 (1986). Furthermore, she did not file an affidavit pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), representing that "for reasons stated [she could not] present by affidavit facts essential to justify [her] opposition" and requesting a continuance to take depositions or to obtain material through discovery. Her "failure to file such an affidavit or to explain [her] failure to do so is fatal to [her] argument." *First Natl. Bank of Boston* v. *Slade,* 379 Mass. 243, 244-245 (1979). See also *Atlas Tack Corp.* v. *DiMasi,* 37 Mass. App. Ct. 66, 67 n.2 (1994).

Moreover, a review of the history of this case reveals that Ostrander had more than enough time in which to undertake discovery but failed to do so. In the three and one-half year period between the filing of Fidelity's complaint and the court's final judgment, Ostrander made no attempt to obtain discovery.

2. *The income tax issue.* Ostrander argues that she should be allowed to offset against any disgorgement the $300,000 she paid in 1988 income taxes on her profit from the MacPherson investment.[6] We disagree. Ostrander failed to present adequate evidence to permit any allowance for taxes,[7] and she failed to account for the substantial tax benefit she will receive from any restitution she pays to Fidelity.

In her reply brief, Ostrander cites *USM Corp.* v. *Marson Fastener Corp.,* 392 Mass. 334, 343-347 (1984), for the proposition that income taxes paid on unlawful gains should be

---

[6]Ostrander also argues that the judge erred in awarding prejudgment interest to Fidelity. We once again decline to consider this issue because it was not raised below. *Lumberman's Mut. Cas. Co.* v. *Hanover Ins. Co.,* 38 Mass. App. Ct. 53, 60 (1995).

[7]Ostrander never submitted her tax return or an affidavit demonstrating that she in fact paid $300,000 in taxes.

deducted from the amount to be disgorged. In that case, the court stated that allowances for income taxes are appropriate, even if the defendant is a wrongdoer, when it can be assured that "any tax benefit from the defendant's payment of after-tax profits to the plaintiff will also be taken from the defendant." *Id.* at 346. The court reasoned that "[t]he over-all object is to render 'the ultimate recovery a sound reflection of [the defendants'] unjust enrichment due to the [breach of the fiduciary duty], and no more.' " *Id.* at 338-339, quoting from *USM Corp.* v. *Marson Fastener Corp.*, 379 Mass. 90, 105 n.17 (1979). The court then denied any allowance for taxes because (1) the defendants failed to present the necessary data to support the entry of such a judgment, (2) the defendants made "no acknowledgment that any tax benefit arising from the payment of damages has to be reflected in the process of determining damages," and (3) no recognition was given to the "value of [the] gain to the defendants between the time it was earned and the time the judgment [was] satisfied." *Id.* at 347.

Here, Ostrander never proved she paid the taxes, she provided no accounting for the substantial tax benefit she will receive from any restitution paid to Fidelity, and she does not acknowledge that she received any benefit from holding onto her illegal profits for years. The burden was on Ostrander to demonstrate that the taxes should be deducted. *Id.* at 338. "If a defendant cannot meet its burden as to costs and profits, the defendant must suffer the consequences." *Ibid.*

3. *The trial judge's refusal to recuse himself.* Ostrander argues that the motion judge committed error in not recusing himself because he entrusted a considerable sum of his and his wife's personal assets to be managed by the Fidelity family of mutual funds. Ostrander asserts that the motion judge's prior investment is enough to create an appearance of bias which necessitated recusal.

"Ordinarily, the question of disqualification is left to the discretion of the trial judge . . . . When a judge is faced with a question as to his impartiality, he must 'consult first his own emotions and conscience. If he pass[es] the internal test of freedom from disabling prejudice, he must next attempt an objective appraisal of whether this [is] "a proceeding in which his impartiality might reasonably be questioned." ' " *Lena* v. *Commonwealth*, 369 Mass. 571, 575 (1976),

citing former S.J.C. Rule 3:25, Canon 3(C)(1)(a), 359 Mass. 842 (1972) (now Rule 3:09, Canon 3[C][1][a])." *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 18 Mass. App. Ct. 446, 449 (1984). On appeal, "an abuse of that discretion must be shown to reverse a decision not to allow recusal." *Haddad* v. *Gonzalez*, 410 Mass. 855, 862 (1991).

Here, the judge explained to the parties that he and his wife were shareholders in certain Fidelity mutual funds which were totally unrelated to this case. He expressly found that after an "examin[ation] of his own emotions and conscience," he was inwardly satisfied of his impartiality. See *id.* at 862 & n.8.

Turning to the question of whether there was the outward appearance of partiality, we do not see that there was such an appearance. The motion judge's involvement with Fidelity had nothing to do with the issue in this case. His financial interest could not have been substantially, or even remotely, affected by the outcome of the proceedings. See S.J.C. Rule 3:09, Canon 3(C)(1)(c), 382 Mass. 812 (1981). Therefore, there was no outward appearance of partiality.

In addition, as Fidelity points out in its brief, if the Superior Court's grant of summary judgment for Fidelity is independently confirmed by this court, then the motion judge's refusal to recuse himself, assuming arguendo that recusal was necessary, was, at worst, harmless error. See *Camacho* v. *Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 490 (1st Cir. 1989).

*Judgment affirmed.*