Fremont-Smith, Thayer, J.
The plaintiff, George Rutledge (“Rutledge”), a resident of Weston, Massachusetts, is the duly appointed Personal Representative of the estate of Charles A. Chaprales (“Charles”), who died on February 9, 2009, and was his nephew. The defendants are Charles’ son Arthur and Arthur’s wife Ann. Plaintiff seeks a declaration that Charles’ estate is the rightful owner of real estate and of a yacht, which defendants assert is rightfully theirs.
The subject real estate is held by the C&V Real Estate Trust, of which Charles was the sole trustee and beneficiary. Arthur bases his claim to ownership on a purported July 1, 1999 “assignment of beneficial interest” wherein Charles stated “that I have previously assigned all my right, title and beneficial interest in the C&V Realty Trust to 1. Arthur C. Chaprales, d.o.b. 9/7/1953, ss# 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.” Arthur further asserts that Charles orally promised him at that time that the property would be his only when Charles “closed his eyes,” i.e., died.
The authenticity of Charles’ 1999 purported assignment to Arthur may be questioned in light of Arthur’s denial under oath in his subsequent 2001 divorce proceedings that he possessed any documents evidencing any ownership interest in the Trust or in the real estate. (See answers to document requests.) The legal force of Charles’ alleged 1999 oral promise to Arthur is also problematic in view of the Statutes of Frauds and of Wills.
But, in any event, it is not controverted that Arthur made sworn statements in connection with his 2001 *221divorce wherein he denied that he had any beneficial interest in the real estate or the yacht.
Arthur also denied under oath any ownership interest in the real estate or the yacht in his November 2, 2001 answers to his then-wife Bonnie’s interrogatories filed in the divorce proceedings.
In answer to interrogatory No. 7, signed under oath by Arthur on November 2, 2001, he said “regarding the value of the property I hold as trustee of the C&V Really Trust, agin, I have no particular knowledge as to its value as all beneficial interest in this property is, under the terms of the trust, the property of my father.”
With respect to the subject boat, Arthur also stated, in his answer to interrogatory No. 8 of plaintiffs interrogatories, signed under oath by Arthur on November 2, 2001:
I have no such boat. I realize that the plaintiff contends that I have some equitable interest in a boat. I deny emphatically any such interest. As I have previously indicated, I sold the family’s boat in November 2000.1 used the net proceeds from the sale primarily to satisfy an outstanding obligation that I owed to my father since approximately 1993. My father then use [sic] these proceeds, together with proceeds from the sale of the boat he had formerly owned and financing he directly and solely obtained to purchase a new boat which I believe is the boat referred to in this interrogatory. That boat is a documented vessel owned exclusively by my father under a Corporation identified as Artcha Yachting Corporation (a Delaware Corporation). The boat is a 26 ft. General Marine pleasure/fishing craft. I have paid nothing for this boat as I have no interest in it.
Then, in his divorce “agreement” dated December 13, 2001, which gained the Probate Court’s approval, he stated under oath in para. 32 that he denied any “beneficial interest” in the boat or in “C&V Really Trust and stock ownership interest in 640 Arsenal Street Corporation.”
According to Arthur’s own sworn admissions, then, Arthur does not claim to own the yacht or the real estate, except when it suits his purposes, as when, a few months later, in his sworn prenuptial agreement with Ann, he stated that he had a “100% beneficial interest” in the boat and in “C&V Realty Trust, the owner of commercial property at 640 Arsenal Street, Watertown, Massachusetts.” See p. 4, infra.
In Otis v. Arbella Ins. Co., 443 Mass. 634 (2005), the Supreme Judicial Court affirmed the allowance of summary judgment where the plaintiffs more recent contentions were “diametrically opposed” to those made in the plaintiffs prior suit, and said, at 639-41:
Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding. Blanch-ette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). See East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623-24 (1996); Fay v. Federal Nat’l Mtge. Ass’n., 419 Mass. 782, 787-88 (1995). “The purpose of the doctrine is to prevent the manipulation of the judicial process by litigants.” Canavan's Case, 432 Mass. 304, 308 (2000). As an equitable doctrine, judicial estoppel is not to be defined with reference to “inflexible prerequisites or an exhaustive formula for determining [its] applicability.” New Hampshire v. Maine, 532 U.S. 742, 751 (2001). Rather, the doctrine is properly invoked whenever a “party is seeking to use the judicial process in an inconsistent way that courts should not tolerate.” East Cambridge Say. Bank v. Wheeler, supra at 623 . . .
Where, as here, application of judicial estoppel has resulted in the entry of summary judgment, abuse of discretion remains the appropriate standard — if the judge has not abused his or her discretion in invoking the doctrine of judicial estoppel, the doctrine bars the claim in question, making summary judgment appropriate. See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., supra, at 31-32, and cases cited; Whitacre Partnership v. Biosignia, Inc., supra, at 38-39.
Because of its equitable nature, the “circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle.” New Hampshire v. Maine, supra at 750, quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982). However, two fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel. First, the position being asserted in the litigation must be “directly inconsistent,” meaning “mutually exclusive” of, the position asserted in a prior proceeding. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., supra at 33, and cases cited. See New Hampshire v. Maine, supra at 750 (current position must be “clearly inconsistent” with prior position). We have rejected claims of judicial estoppel where the position being asserted is not directly contrary to the position previously asserted. See Canavan’s Case, supra at 308-09; Paixao v. Paixao, 429 Mass. 307, 311 (1999); Blanchette v. School Comm. of Westwood, supra, at 184-85. Second, the parly must have succeeded in convincing the court to accept its prior position. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., supra, and cases cited. Where the court has found in favor of that party’s position in the prior proceeding, “judicial acceptance of an inconsistent position in a later proceeding would create ‘the perception that either the first or the second court was misled.’ ” New Hampshire v. Maine, supra at 750, quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982). See East
*222Cambridge Sav. Bank v. Wheeler, supra at 623 (judicial estoppel not applicable where party did not achieve success in prior proceeding). See also Fay v. Federal Nat'l Mtge. Ass’n, supra at 788.
The Court concludes that the criteria for application of judicial estoppel to Arthur’s claims in this case, are met. First, Arthur’s position in this case is “directly inconsistent” with the position he asserted in the prior divorce proceedings. Arthur cannot assert that his prior sworn disclaimers of any beneficial interest were truthful when made based upon his father’s continued receipt of rent from the real estate and payment of taxes thereon. Any contention that he believed in good faith at the time that his 2001 sworn statements were truthful is contradicted not only by the terms of the 1999 assignment on which he relies, but also by the sworn statement in his February 28, 2002 prenuptial agreement with Ann, executed only several months after his December 13, 2001 divorce settlement agreement, in which he declares that Charles had already given him “100% beneficial interest in the assets detailed on Exhibit A,” which Exhibit lists “C&V Realty Trust, the owner of the commercial property at 640 Arsenal Street, Watertown, Massachusetts, which has a present value of approximately $2,000,000.00 and generates approximately $150,000.00 in annual income,” and “Artcha Yachting corporation that owns to RAS-CAL a boat with a present value of approximately $150,000.”
With respect to the second requirement for application of judicial estoppel, that “the party must have succeeded in convincing the court to accept its prior position,” Arthur’s dishonest sworn statements submitted to the court disclaiming any beneficial interest in trust assets valued at $2,000,000 or in a boat valued at $150,000, resulted in the Probate Court’s giving its approval to a divorce settlement regarding his support obligations.
Moreover, as the Court pointed out in Otis, the above two criteria are not categorical requirements. As the Court stated, 443 Mass, at 642:
Again, judicial estoppel is an equitable doctrine, calling for the exercise of discretion in its application to particular facts. Like other courts that have grappled with the “hazy” contours of the doctrine, id. at 33, we decline to construct a categorical list of requirements or to delineate each and eveiy possible exception. Rather, judges should use their discretion, and their weighing of the equities, and apply judicial estoppel where appropriate to serve its over-all purpose. That purpose is “to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system,” and judicial estoppel may therefore be applied “when a litigant is ‘playing fast and loose with the courts ’ ” Id. quoting Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987).
The Court finds that Arthur has been “playing fast and loose with the courts” and “improperly manipulating the machinery of the judicial system” so that application of judicial estoppel is warranted.
ORDER FOR JUDGMENT
Accordingly, for the above reasons and the other reasons stated at oral argument and in plaintiffs memorandum in support, plaintiffs motion for summary judgment is ALLOWED, defendants’ motion for summary judgment is DENIED, and judgment shall be entered in favor of the plaintiff.