Connolly, Thomas E., J.
I. INTRODUCTION
Plaintiff Corporations, R&W Realty, Inc. (“R&Wj and Environ Realty Corp. (“Environ”), Plaintiff and Defendant-in-Counterclaim, RoseAnne S. Rankin (“Rankin”), and Defendant-in-Counterclaim, Raymond DeSimone, submit a Motion for Summary Judgment against Defendant and Plaintiff-in-Counterclaim, David Cacciola, Sr. (“David, Sr.”), and Defendants, David Cacciola, Jr. (“David, Jr.”) and Jonathan H. Cacciola (“Jonathan”), over the ownership of the two Plaintiff Corporations. Plaintiffs’ Motion for Summary Judgment is DENIED for the following reasons.
II. BACKGROUND[2]
David, Sr., unable to meet creditor obligations in the mid-1970s, formed two corporations to protect his assets. R&W and Environ were respectively established in 1974 and 1975 under the ostensible ownership of Rankin, David, Sr.’s daughter and Plaintiff in this case. Between the dates of corporate formation and 2010, David, Sr. transferred properly into R&W and Environ as a means to disguise his worth and to deceive his creditors, three former wives, and the Internal Revenue Service (“IRS”).[3] IRS forms filed throughout this period on behalf of R&W and Environ have repeatedly identified Rankin, and none of the Defendants, as 100% stockholder of said corporations, or have been left blank. Meanwhile, as recently as 2010, David, Sr. and his son, David, Jr., made financial withdrawals from the corporations; in less than three years (from November 12, 2007 to August 12, 2010) the two withdrew a combined amount of $273,413. See Ex. GG, Vol. II.
Though Rankin’s exact position with regard to R&W and Environ is a matter of dispute, both parties recognize her professional involvement in the corporations’ business affairs. Defendants claim that she provided secretarial and administrative support but that at no point was she the intended legal shareholder. Rankin, according to Defendants, merely held all the property and money as a “straw” to protect David, Sr. from his creditors, bankruptcy filings, his wife’s claims against him in their divorce proceedings, and others to whom he might owe money. The Defendants also claim that Rankin always intended to transfer the shares back to her father. Rankin, on the other hand, denies that her role was so specific and limited. She claims that she created R&W and Environ for her father at a time when he was struggling financially and that she has managed the business of the corporations ever since. Indeed, annual filings with the Secretary of the Commonwealth for both R&W and Environ list Rankin as the director, president, and treasurer, as well as the sole stockholder, since corporate inception. See Ex. A, Vol. I.
For a period of many years, David, Sr. repeatedly and successfully asserted and testified in numerous judicial proceedings that he owned no interest in R&W and Environ, and that Rankin held all the stock in both corporations in her own name. David, Sr. did not list any interest in either of the Plaintiff corporations at his personal bankruptcy filings in 1977, his divorce actions in 1982-1983,1994, and 1995 or legal disputes with his brother in 2003. No question of fact persists as to Rankin’s knowledge of David, Sr.’s transfer of property to R&W and Environ or his denial of corporate ownership in various legal proceedings and testimonies.
In 1993, Rankin fell into financial difficulty and similarly filed for bankruptcy. In that proceeding, Rankin submitted to the Court a financial statement in which she also denied any stock ownership in R&W or Environ. See Ex. EE, Vol. II.
Rankin filed a declaratory judgment action on September 23, 2010 against the Defendants, seeking a legal finding that she is the President, Treasurer, Secretary, and Sole Director of R&W and Environ.[4] Shortly thereafter, on October 15, 2010, David, Sr. filed a counterclaim, alleging, in part, that he is the sole shareholder of the two corporations.[5] In her Motion for Summary Judgment, Rankin seeks to have the dispute resolved as a matter of law by invoking the equitable doctrine of judicial estoppel.
III.DISCUSSION
A. The Parties’ Legal Positions
Plaintiffs seek to establish that the Defendants are precluded from claiming ownership of R&W and Envi *2 ron due to the doctrine of judicial estoppel. They contend that the positions taken by David, Sr., David, Jr. and Jonathan are, in fact, exactly the opposite to the positions which David, Sr. successfully asserted in prior litigation, sworn testimony, affidavits, and bankruptcy filings. The Plaintiffs further contend that David, Sr. has manipulated the judicial system by inconsistently attributing and asserting ownership of the corporations under oath. They claim that the proof of such action invokes the equitable doctrine of judicial estoppel, and thereby prevents the Defendants from establishing the ownership they so claim.
Defendants, on the other hand, seek to establish that Rankin cannot assert such an equitable doctrine in these circumstances. David, Sr. indicates that he was successful in accomplishing fraud to his financial betterment but that Rankin does not legally own any stock of R&W and Environ outright. The Defendants claim and have offered proof by affidavit that David, Sr. never intended for Rankin to own the two corporations, but that she instead assisted her father’s attempt to hide his assets until he made demand for the books and records in September 10, 2010. Moreover, the Defendants argue that Rankin should not obtain Summary Judgment due to her prior conduct and assertions with regard to the ownership of the corporations. Under the doctrine of “unclean hands,” the Defendants claim that Rankin’s complicity in her father’s fraud as well as previous denial of ownership in either R&W or Environ at her own bankruptcy proceedings estops her from asserting any equitable doctrines related to this matter.
B. Application of Law
Summary Judgment is a “device to make possible the prompt disposition of controversies on their merits without trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983), quoting Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Summary Judgment is granted when there is no genuine issue of material fact and the Summary Judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso, 390 Mass. at 422. The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the Summary Judgment record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the burden shifts to the nonmoving party to respond by “set(ting) forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.P. 56(e); Kourouvacilis v. Gen. Motors, 410 Mass. 706, 716 (1991).
Normally, in this case, there would be sufficient evidence to defeat the Plaintiffs’ Motion for Summary Judgment, since there are genuine issues of material fact. However, the Plaintiffs’ arguments are not based-on the absence of genuine issue of material fact, but rather on the application of the law, the equitable doctrine of judicial estoppel. Therefore, this Court will consider whether the doctrine of judicial estoppel applies to these circumstances.
“Judicial estoppel is an equitable doctrine that precludes a parly from asserting a position in one legal proceeding that is contrary- to a position it had previously asserted in another proceeding.” Otis v. Arbella Mutual Ins. Co., 443 Mass. 634, 639-40 (2005), quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). The doctrine serves to “prevent the manipulation of the judicial process by the litigants.” Id. at 640, quoting Canavan’s Case, 432 Mass. 304, 308 (2000). See New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001); Otis, 443 Mass at 640. “[T]he broad purpose of the doctrine is to protect the integrity of the judicial system and parties who play ‘fast and loose’ with that system by means of any device, be it testimony under oath or arguments asserted by their counsel, may be subject to judicial estoppel.” Id. at 646; Rutledge v. Chaprales, 27 Mass. L. Rptr. 220 (June 18, 2010, Fremont-Smith, J.). Due to its equitable nature, judicial estoppel is not defined by “inflexible prerequisites or an exhaustive formula.” See New Hampshire, 532 U.S. at 750-51. Rather, the doctrine is properly invoked “whenever a parly is seeking to use the judicial process in an inconsistent way that courts should not tolerate.” Id. at 751, quoting East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623 (1996); see also Martin v. Heimlich, 2007 Mass.Super. LEXIS 324 (August 9, 2007, Billings, J.) (finding that a party, having represented in Bankruptcy Court that property was sold outright, may not presently claim to have retained a secret interest in that property).
A successful claim of judicial estoppel generally necessitates the showing of at least two widely recognized elements: (1) that “the position being asserted ... is directly contrary to the position previously asserted” and (2) that “the party must have succeeded in convincing the court to accept its prior position.” Otis, 443 Mass. 640-41; see also New Hampshire, 532 U.S. at 750-51; Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30-31 (1st Cir. 2004); Commonwealth v. Frank DiBennedetto, 458 Mass. 657, 671 (2011); Sandman v. Matthew McGrath 78 Mass.App.Ct. 800, 801-02 (2011). A third possible element includes “whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.” Otis, 443 Mass at 641, quoting New Hampshire, 532 U.S. at 751. However, courts have not typically applied this element, because parties will rarely, if ever, advance a position that does not benefit their cause. Id.; see also Alternative Sys. Concepts, Inc., 374 F.3d at 33. Thus, instead of weighing whether a party has obtained an unfair benefit or imposed an unfair detriment, courts have considered whether that party has used the judicial process to *3 secure a legal advantage, based upon a showing of the first two elements. See InteGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003); Otis, 442 Mass. 641.
On the surface, the facts of this case suggest applying.judicial estoppel against the Defendants. David, Sr. succeeded in convincing, under oath, the Superior Court, the Probate and Family Court, and the Bankruptcy Court that he did not own any interest in either R&W or Environ. He now asserts ownership over the two corporations, a position directly contrary to the one he previously and successfully asserted. See Sandman, 78 Mass.App.Ct. at 804. Moreover, the Defendants are seeking to obtain an unfair advantage through the intentional assertion of inconsistent positions. A jury could reasonably infer that David, Sr. was playing a “shell game” with his former and present corporations, the IRS, the Bankruptcy Court, and his present and former employees. The arrangement, based on the size of the withdrawals from the funds of these two corporations by David, Sr. and David, Jr. and the set up of these corporations as a shield from creditors, undeniably benefited the Defendants. Aside from the question of the arrangement’s legality, permitting the Defendants to now claim ownership over the corporate assets of R&W and Environ would amount to an improper ratification of inconsistent conduct before the Court.
However, in order to seek equity before the Court, a plaintiff must have “acted equitably.” New England Merchants Nat. Bank of Boston v. Kann, 363 Mass. 425, 428 (1973). The doctrine of unclean hands has long held that “the doors of equity are closed ‘to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior’ of the other party.” Fidelity Management & Research Co. v. Ostrander, 40 Mass.App.Ct. 195, 200-01 (1996), quoting United States v. Perez-Torres, 15 F.3d 403, 407 (5th Cir. 1994); see also Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 387 (1944) (“[H]e who comes into equity must come with clean hands”); Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244-45 (1933). “(W]hile equity does not demand that its suitors shall have led blameless lives... as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.” Fidelity Management & Research Co., 40 Mass.App.Ct. at 200-01, quoting Precision Instrument Mfg. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814-15 (1945). In its application, the doctrine allows “broad discretion” for the trial judge to decide whether to deny relief. Fales v. Glass, 9 Mass.App.Ct. 570, 575 (1980). Therefore, finding that a party’s fraud, deceit, or bad faith directly related to the matter in controversy may preclude the application of judicial estoppel. See Fidelity Management & Research Co., 40 Mass.App.Ct. at 200-01 (Plaintiffs criminal conviction related directly to the controversy at issue and therefore prevented her from advancing equitable claims).[6]
The Defendants properly and correctly assert the equitable defense of unclean hands. The Plaintiffs complicity in and furtherance of her father’s fraudulent behavior directly relates to her claim of judicial estoppel, as does her own previous dishonesty regarding corporate ownership. Amerada Hess Corp. v. Garabedian, 416 Mass. 149, 156 (1993); Fidelity Management & Research Co., 40 Mass.App.Ct. at 200. There is no question that Rankin participated in the existence of R&W and Environ; she had abundant knowledge of the corporations’ purpose to hide David, Sr.’s assets from creditors and others. Even if Rankin’s duties were limited to that of a bookkeeper, she witnessed the size of the Defendants’ withdrawals and did nothing for years. Furthermore, Rankin argues that she served as the sole shareholder of R&W and Environ since corporate inception, yet she denied such ownership in her own bankruptcy filings in 1993. She now claims that David, Sr.’s lies and manipulation outweigh her own duplicitous conduct and involvement. These facts stretch her credibility beyond the breaking point, and indelibly taint her innocence with regard to this matter. She thus comes to this Court with a history of inequitableness that prevents her from obtaining the relief she desires.
The present matter is distinguishable from other recent cases in which this Court has applied judicial estoppel. See Rutledge, 27 Mass. L. Rptr. 220; Martin, 2007 Mass.Super. LEXIS 324. For example, the Superior Court ruled in Rutledge v. Chaprales that judicial estoppel precluded a defendant from claiming interest in real estate and a yacht when he had disavowed such interest in that property during a prior divorce proceeding. See 27 Mass. L. Rptr. 220. The defendant succeeded in procuring a favorable divorce judgment based on his stated non-ownership of the properly, just as David, Sr. had succeeded in procuring a divorce judgment in 1984 based in part on his non-ownership of R&W and Environ. Id. In Rutledge, however, the party seeking to invoke the doctrine had not come to the Court with the same unclean hands that Rankin does here. Id. And, given the broad discretion granted to judges for applying the doctrine, this Court will not choose to punish one sequence of deception and impropriety and then award another. See Fales, 9 Mass.App.Ct. at 575. A jury is well suited to assess the facts and determine whether the Plaintiff is justifiably entitled to relief.
IV. CONCLUSION AND ORDER
For the foregoing reasons, judicial estoppel does not apply to the matter at hand. As a result, Plaintiffs’ Motion for Summary Judgment is DENIED.

 The following facts, unless otherwise noted, are taken from the parties’ respective Statements of Undisputed Material Fact, submitted pursuant to Superior Court Rule 9A(b)(5) and the Joint Appendix, submitted pursuant to Superior Court Rule 9A(b)(5)(vi).

David Sr.’s problematic professional history is not limited to the fraudulent activities involving R&W and Environ. One of David, Sr.’s many predecessor corporations was AARCO, Inc., a nonunion contractor, which brought suit against a union for libel and intentional interference with advantageous relationship. See AARCO, Inc. v. Robert W Baynes et al., 391 Mass 560 (1984). David, Sr. is mentioned in the Supreme Judicial Court’s opinion: “He [David, Sr.) has gone into bankruptcy several times and hurt not only his employees . . . but also supply houses, subcontractors, and customers he had. In recent years, he has gone out of business as:
(1.) Allied Heating,
(2.) Allied Air Conditioning,
(3.) Monarch Sheet Metal,
(4.) Kent Construction, and several other companies.”
Id, at 562 n.2. The Supreme Judicial Court, in that case, continued: “[t]he record shows that Baynes [the plaintiffs] has had personal involvement through the union with problems arising out of [David, Sr. ‘s] prior business conduct and could reasonably inferred that AARCO was another corporate form of convenience for [David, Sr.].” Id. at 565.

Plaintiff also alleged the following against the Defendants: one count of conversion and a violation of G.L.c. 93A. See Plaintiffs Complaint.

 David, Sr. also counterclaimed the following against the Plaintiff: breach of contract, fraud, conversion, conspiracy, interference with advantageous relations, breach of fiduciary duty, abuse of process, and malicious prosecution. See Defendants’ Answer and Counterclaim of David Cacciola, Sr. David, Sr. amended his counterclaim to additionally allege a resulting trust. See Defendants’ Amended Answer and Amended Counterclaim of David Cacciola, Sr.

The doctrine of unclean hands is fully stated and explained in Precision Instrument Mfg. Co. v. Automotive Co. as follows:
The guiding doctrine in this case is the equitable maxim that “he who comes into equity must come with clean hands.” This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be “the abetter of iniquity.” Bein v. Heath, 6 How. 228, 47 U.S. 247. Thus, while “equity does not demand that its suitors shall have led blameless lives,” Loughran v. Loughran, 292 U.S. 216, 292 U.S. 229, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 290 U.S. 245; Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 321 U.S. 387; 2 Pomeroy, Equity Jurisprudence (5th Ed.) §§397-99.
324 U.S. 806, 814-15 (1945).