NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-984

MELISSA PACHECO

vs.

UNIVERSITY OF MASSACHUSETTS & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, an assistant dean at the University of Massachusetts (UMass), claimed the defendants unlawfully discriminated against her on the basis of sex in determining her starting salary when she was promoted to that position.  Her amended complaint included counts under both the Massachusetts Equal Pay Act (MEPA), G. L. c. 149, § 105A, and G. L. c. 151B, § 4.  A judge of the Superior Court (motion judge) allowed the defendants' motion for summary judgment on the c. 151B sex discrimination claims and as to the MEPA claim against Karim; the MEPA claims against Gunasekaran and UMass were tried to a jury before a second judge (trial judge).  The plaintiff

---

[1] Angappa Gunasekaran and Mohammad Karim.

prevailed on her MEPA claims at trial. She appeals from the summary judgments entered on the sex discrimination claims. We affirm.

Background. "We summarize the findings set forth in the order on the [defendants'] . . . motion[] for summary judgment, supplemented by other uncontroverted facts in the summary judgment record, . . . and viewing 'the evidence in the light most favorable to the party against whom summary judgment was entered,'" -- here, the plaintiff (citation omitted). Williams v. Board of Appeals of Norwell, 490 Mass. 684, 685 (2022).

The plaintiff began working at UMass in 1996 and held various positions. In July 2016, she applied for a promotion to the position of assistant dean for graduate programs at one of the UMass colleges. Gunasekaran was the dean of that college, and Karim was the provost of UMass. Gunasekaran recommended the plaintiff for the position.

As was the standard procedure at UMass, a compensation analyst in the human resources department conducted a salary analysis to determine the plaintiff's salary in her new role. The analyst considered the job description, minimum and preferred criteria for the job, and the plaintiff's credentials compared to those of her peers. The analyst examined the salaries of eight comparator employees, including those of another assistant dean at the same UMass college and the person

whom the plaintiff was replacing.  In doing so, she did not consider the $90,000 salary of an employee who held an interim assistant deanship for four to six months and left UMass several months before the plaintiff's promotion.  The "strongest comparators," as determined by the analyst, had starting salaries (in 2011 and 2012) of $84,999.98.  As part of the salary analysis, the analyst reviewed these comparators' resumes.  In consultation with human resources, Gunasekaran offered the plaintiff $85,000.

The plaintiff requested a higher salary and, after speaking with the human resources analyst, Gunasekaran offered the plaintiff $88,000, which she accepted.  In arriving at this figure, Gunasekaran and the analyst determined that it would not be equitable to offer the plaintiff a higher salary than that offered to the two comparator employees because they considered these employees to be stronger candidates.

The plaintiff testified that Gunasekaran did not make any comments about her gender during the application process for the assistant dean position.  She did not have any conversation with Karim about her salary for that position.

Discussion.  "The allowance of a motion for summary judgment 'is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to

3

judgment as a matter of law'" (citation omitted).  Williams, 490 Mass. at 689.

We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, "all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted).  Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018).  "The moving party bears the burden of affirmatively demonstrating the absence of a triable issue."  Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6 (2008).  "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment" if they demonstrate that the opposing party "has no reasonable expectation of proving an essential element of that party's case."  Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

If the moving party carries its burden, "the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact."  French King Realty Inc. v. Interstate Fire & Cas. Co., 79 Mass. App. Ct. 653, 659-660 (2011).  Even though summary judgment is disfavored in employment discrimination cases of disparate treatment, "we have upheld summary judgment in favor of an employer where 'the plaintiff is unable to offer admissible evidence of the

4

defendant's discriminatory intent, motive, or state of mind sufficient to carry the plaintiff's burdens and support a judgment in the plaintiff's favor.'"  Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 39 (2005), quoting Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997).

To prove discrimination under G. L. c. 151B, an employee must prove four elements, "membership in a protected class, harm, discriminatory animus, and causation."  Sullivan, 444 Mass. at 39.  "Direct evidence of . . . discriminatory animus and causation[] rarely exists, . . . and a plaintiff may therefore establish one or both by indirect or circumstantial evidence" under the paradigm described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).  Sullivan, 444 Mass. at 39.

A plaintiff's burden to establish "by the preponderance of the evidence a prima facie case of discrimination" is "not onerous."  Sullivan, 444 Mass. at 40.  The plaintiff "must simply produce sufficient evidence that [the defendant's] actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors" (quotation and citation omitted).  Id.

In support of her claim, the plaintiff cites (1) her starting salary amount as compared to the then-current salaries of male comparators and (2) two comments made by Gunasekaran

5

during salary negotiations for one of the plaintiff's earlier positions. We take these in order.

First, the summary judgment record established that Pacheco's initial and increased salary offers came after UMass conducted a salary analysis following its "standard procedure." UMass examined the salaries of eight comparators of both sexes, focusing most closely on two "strongest comparators." Gunasekaran and the analyst concluded that, based on their job experience, the two comparators (both men) were "stronger candidates" than the plaintiff. Each had prior faculty experience while the plaintiff had never held a faculty position at a university or college. The position of assistant dean required teaching at least one course per semester.

The two comparators were also distinguishable because each had served in a supervisory position, one in the U.S. Army R.O.T.C. and the other at a private company, while the plaintiff had limited supervisory experience. For a position that required "[c]ooperative and consultative leadership skills" working with a diverse population, leadership experience was a relevant, nondiscriminatory basis on which to distinguish candidates' qualifications. See Delva v. Brigham & Women's Hosp., Inc., 72 Mass. App. Ct. 766 (2008). Despite being less qualified than the two comparators in the view of the analyst and Gunasekaran, the plaintiff was offered a higher starting

6

salary than either of them.[2]  Any salary disparity thus does not amount to "objective evidence that [the plaintiff] has been disadvantaged in respect to salary, grade, or other objective terms and conditions of employment."  MacCormack v. Boston Edison Co., 423 Mass. 652, 663 (1996).

The plaintiff also alleged that, in meetings to discuss a salary reclassification for her prior job, Gunasekaran said, "[W]ell, I don't know what your husband makes," or words to that effect, and, "[I]f my wife made more money I could sit home and watch tv all day."[3]  The plaintiff maintains that these comments implied that the plaintiff's husband was the real breadwinner and that her salary was secondary because she is a woman.

Against the backdrop of undisputed facts about the salary determination process, Gunasekara's sexist statements during an earlier salary discussion, standing alone, are insufficient to avoid summary judgment.  Compare Adams v. Schneider Elec. USA, 492 Mass. 271, 277-278 (2023) (plaintiff sufficiently alleged age discrimination where reductions in force disproportionately

---

[2] The plaintiff's salary was offered in 2016 dollars while those of the two comparators dated from 2011 and 2012.  Although these are presumably not the same, the plaintiff did not make this argument, and the record is devoid of material that would allow a comparison between the two.

[3] Neither the complaint nor the interrogatory responses places these comments precisely in time.  They occurred during a salary reclassification that spanned late July 2014 to at least February 2016.

7

affected older workers and internal e-mail messages focused on replacing "age diversity" with plan to hire "early career talents"); Sullivan, 444 Mass. at 47-48 (plaintiff sufficiently alleged sex discrimination when asserted that defendant disproportionately terminated women, disproportionately reassigned her work to men, and retained men with lower performance ratings). "[I]solated or ambiguous remarks, tending to suggest animus based on [an impermissible basis], are insufficient, standing alone, to prove an employer's discriminatory intent." Fontaine v. Ebtec Corp., 415 Mass. 309, 314 n.7 (1993). In this case, unlike those noted by the court in Fontaine, the remarks do stand alone. They are insufficient to raise a disputed issue of material fact.

We take a moment to address the plaintiff's request that we apply collateral estoppel based on the jury's verdict on the MEPA claim and then award judgment in her favor on the c. 151B claims against all three defendants. The argument fails for several reasons. First, the plaintiff did not raise this argument in the trial court. While she did file a motion to reconsider on September 21, 2022, that was before the September 22 jury verdict. "Reliance on facts not before the motion judge is improper. In our review of a motion for summary judgment we are 'confined to an examination of the materials before the court at the time the rulings were made.'" Fidelity Mgt. &

Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 200 (1996), quoting Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Assn., 399 Mass. 889-890 n.9 (1987). Because the jury verdict was not before the trial judge when she ruled on the motion for reconsideration, it is not before us as we review that ruling.

Second, our appellate jurisdiction extends only to the review of rulings made by lower courts. See Mass. R. A. P. 3 (c) (1) (A) (ii), as appearing in 491 Mass. 1601 (2023) (in civil cases, notice of appeal "shall designate" "the judgment, decree, adjudication, or separately appealable order from which the appeal is taken"). Although the plaintiff opposed the motion for summary judgment, she did not seek entry in the Superior Court of a judgment in her favor (e.g., by cross-moving for summary judgment). Were we to find in favor of the plaintiff, her remedy would be a remand, not the entry of judgment in her favor that she now seeks.[4]

_____

[4] The plaintiff's argument that the judge should have allowed her motion for reconsideration does not rise to the level of appellate argument and we therefore do not consider it. See Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011) (insufficient basis for appellate consideration where appellant "failed to support his claims of error with sufficient legal argument . . . and fail[ed] to cite to sufficient supporting authority"). See also Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("appellate court need not pass upon questions or issues not argued in the brief"); Gaffney v. Contributory Retirement Appeal

Although we do not reach the merits of the plaintiff's collateral estoppel argument, we note that, in any event, the issues raised by the two claims appear to be different.  The MEPA claim required no proof of discriminatory intent, see Jancey v. School Comm. of Everett, 421 Mass. 482, 494 (1995), while the c. 151B claim required such proof.  G. L. c. 151B, § 4.

We conclude that summary judgment was properly allowed for the defendants on the plaintiff's c. 151B claims.

Summary judgments dated December 19, 2022, affirmed.

By the Court (Englander, Hershfang & Brennan, JJ.[5]),

Clerk

Entered:  January 17, 2025.

_____

Bd., 423 Mass. 1, 6 n.4 (1996) (conclusory statements in brief do not rise to level of appellate argument).

[5] The panelists are listed in order of seniority.

10